**HCA HEALTH SERVICES
OF OKLAHOMA, INC.,
Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary, Department of Health and Human Services, Defendant–Appellee.**

No. 93–5113.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 20, 1994.

Decided July 1, 1994.

Robert A. Klein, Washington, DC, argued the cause and filed the briefs for appellant.

Gerard Keating, Atty., Dept. of Health and Human Services, Washington, DC, argued the cause for appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., Eric H. Holder, Jr., U.S. Atty., Harriet S. Rabb, Gen. Counsel, Darrel J. Grinstead, Associate Gen. Counsel, Henry R. Goldberg, Deputy Associate Gen. Counsel, and William C. Bailey, Jr., Atty., Dept. of Health and Human Services, Washington, DC.

Before WALD, SILBERMAN and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

We uphold today the Secretary of Health and Human Services' ruling that when a fiscal intermediary reopens its original determination regarding the amount of reimbursement that a Medicare provider is to receive from the federal government under the Medicare program, 42 U.S.C. §§ 1395–1395ccc (1988), a provider's appeal of that reopening to the Provider Reimbursement Review Board is limited to the specific issues revisited on reopening and may not extend further to all determinations underlying the original reimbursement decision for that financial year. We reject appellant's contentions that the statute and regulations compel a contrary conclusion and, accordingly, affirm the district court.

## I. BACKGROUND

### A. *Statutory Framework*

Under the Medicare statute ("Statute"), Title XVIII of the Social Security Act, Pub.L. No. 89–97, 79 Stat. 286, 291 (1965), as amended, 42 U.S.C. §§ 1395–1395ccc (1988), healthcare providers are reimbursed by the Secretary of Health and Human Services ("Secretary") for the services they furnish to Medicare patients based on the lesser of their customary charge for, or reasonable cost of, those services. 42 U.S.C. § 1395f(b)(1). Commonly, reimbursement is handled by fiscal intermediaries, such as private insurance companies, who make interim payments to providers on at least a monthly basis and determine at the close of the fiscal year whether such payments exceeded or fell short of the actual amount of reimbursement that the provider was due under applicable regulations. *Id.* at §§ 1395g, 1395h, 1395x(v)(1)(A)(ii). Accordingly, a provider will submit an annual cost report to its fiscal intermediary who then issues a Notice of Program Reimbursement ("NPR") detailing the calculations of the amount of reimbursement under the Statute. The NPR is appealable within 180 days to the Provider Reimbursement Review Board ("Board") appointed by the Secretary pursuant to § 1395oo (h). *Id.* at § 1395oo (a).

When reviewing an NPR, the Board may modify any matter covered by the provider's cost report for the fiscal year at issue "even though such matter[ ] w[as] not considered by the intermediary in making such final determination." *Id.* at § 1395oo (d). *See also* 42 C.F.R. § 405.1869 (1992); *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988). A decision by the Board is potentially subject to further review by the Secretary's delegate, the Deputy Administrator of the Health Care Financing Administration ("HCFA"). *See* 42 U.S.C. § 1395oo (f)(1); 42 C.F.R. § 1875; *see also* 42 C.F.R. § 405.1842 (expedited review when Board has no authority to decide the issue). If left undisturbed, the Board's decision is reviewable, and if modified by the Secretary the latter's decision is reviewable in the district court in which the provider is located or in the District Court for the District of Columbia. 42 U.S.C. § 1395oo (f)(1).

Under the regulations an intermediary may reopen an NPR within three years of issuance. 42 C.F.R. § 405.1885. An intermediary's decision on reopening of an NPR is reviewable by the Board if such review is requested within 180 days. *Id.* at §§ 405.-1889 & 405.1841(a)(1) (as incorporated by §§ 405.1835(a)(2) & 405.1889). The question we face here concerns the scope of that review.

### B. *History of Proceedings*

Appellant HCA Health Services of Oklahoma, Inc. ("HCA" or "Hospital") owns and operates Presbyterian Hospital in Oklahoma

City which provides health-care services to Medicare beneficiaries. HCA submits its cost reports to Blue Cross/Blue Shield of Oklahoma, the designated fiscal intermediary for the Hospital. On March 28, 1988, Blue Cross/Blue Shield of Oklahoma issued the NPR for the financial year ending September 30, 1985 ("FY 1985"), and HCA did not appeal that determination to the Board within the 180–day statutory period. On September 11, 1989, within the three-year limit for reopening program reimbursement determinations, the intermediary expressed its intention to revisit its FY 1985 reimbursement determination for HCA, in order (1) "[t]o add-in ownership costs for hospital occupied areas of [a specified building]," (2) "[t]o reduce bad debts by bad debt recoveries," and (3) "[t]o adjust the DRG [Diagnostic Related Group] amount." Joint Appendix ("J.A.") 65. Three months later, the intermediary notified HCA of its plan to reopen the cost report to adjust in addition for "[d]irect [g]raduate [m]edical [e]ducation [c]osts" for FY 1985. J.A. 67. In February of the following year it further indicated that it would reopen the FY 1985 cost report in order "[t]o disallow bad debts because Medicare accounts did not receive similar collection efforts at the collection agency as non-Medicare accounts." J.A. 79.

On January 31, 1991, and again on May 1, 1991, all within the 180–day time limit for requesting Board review of a reopening but well outside the 180–day period for seeking review of the original FY 1985 NPR, the Hospital appealed the revised NPR to the Board. However, the Hospital sought to appeal not only issues revisited in 1989, but also the intermediary's calculation of depreciation and bond defeasance costs which had been decided in the original NPR but never revisited since. J.A. 115. The Board held that because the time limit to appeal the original determination had expired, its jurisdiction was limited to reviewing "matters adjusted by the revised NPR" for which the 180–day appeals period had not yet expired. J.A. 44.

The Hospital filed suit challenging that determination, and the district court adopted the magistrate judge's recommendation upholding the Board's determination. HCA puts forth three arguments on appeal. First, it argues that pursuant to 42 U.S.C. § 1395oo (a) the Board had jurisdiction not only over the matters revised on reopening but over all matters covered in the NPR because each concerns "the period covered by such report" and affects "the amount of total program reimbursement" for that financial year. Second, appellant argues that even if a partial revision of an NPR does not automatically permit an appeal of the entire NPR, *once* the Board asserts jurisdiction over the reopened aspects of the NPR, as it has done here, the statute and regulations confer jurisdiction upon the Board to review the entire NPR. Third, the Hospital asserts that the depreciation costs were implicitly revisited in 1989 in the course of reconsidering ownership costs. We reject appellant's first two arguments for reasons set forth below, and we do not address the third contention because it appears for the first time on appeal, *i.e.*, it was not raised before the Board, the magistrate judge or the district court.

## II.  ANALYSIS

### A.  *Standard of Review*

■■■ We approach the Board's decision without deference to the district court's judgment and use the same standard applied by the district court in its original review. *Marymount Hosp., Inc. v. Shalala*, 19 F.3d 658, 661 (D.C.Cir.1994) (citing *Biloxi Regional Medical Ctr. v. Bowen*, 835 F.2d 345, 349 (D.C.Cir.1987)). Accordingly, we set aside the Board's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or unsupported by substantial record evidence. 5 U.S.C. § 706(2)(A) & (E). *See* 42 U.S.C. § 1395oo (d) & (f)(1). In examining the Board's construction of the Secretary's duly promulgated regulations,[1] "the ultimate crite-

---

1. Since the Secretary did not exercise her power to reverse or modify the Board's decision, *see* 42 U.S.C. § 1395oo (f)(1), and has affirmatively adopted the Board's position in this appeal and elsewhere, *see General Hospital of Everett v. Blue*

Cross and Blue Shield Ass'n, Medicare & Medicaid Guide (CCH) ¶ 35,926 (HCFA Adm'r Decision May 19, 1986), *reprinted in* Addendum to Appellee's Brief at 27, we treat the Board's decision as one of the Secretary herself.

rion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). We then ask in addition whether the Board's reading of the regulations is consistent with the statutory scheme it implements. "[T]o the extent [the Board's interpretation is] based ... on the language of the Medicare [Statute] itself," we examine the decision with the appropriate deference due to an agency that has been charged with administering the Statute. *Marymount Hospital,* 19 F.3d at 661. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). Unless Congress has spoken to the particular issue at hand, we defer to the agency's interpretation whenever it is a permissible construction of the statute. *Chevron,* 467 U.S. at 842–44, 104 S.Ct. at 2781–82.

B. *Board Review of an Intermediary's Decision on Reopening*

1. *Statutory Basis*

■ 42 U.S.C. § 1395oo (a) confers a right upon the provider to "obtain a hearing [before the Board] with respect to ... [the provider's] cost report," if the provider is dissatisfied with the "final determination of the ... fiscal intermediary ... as to the amount of total program reimbursement due the provider ... for the period covered by such [filed cost] report," the amount in controversy is $10,000 or more, and the provider requests such a hearing within 180 days of notice of the intermediary's final determination. Subsection (d) in turn provides that "[a] decision by the Board shall be based upon the record made at such hearing" and confers upon the Board

> the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report ... even though such matters were not considered by the intermediary in making such final determination.

*Id.* at § 1395oo (d) (emphasis added). As the Supreme Court held in *Bethesda,* "[t]his language allows the Board, once it obtains jurisdiction pursuant to subsection (a), to review and revise a cost report with respect to matters not contested before the fiscal intermediary. The only limitation prescribed by Congress is that the matter must have been 'covered by such cost report.'" 485 U.S. at 406, 108 S.Ct. at 1259. In other words, once Board jurisdiction pursuant to subsection (a) obtains, anything in the original cost report is fair game for a challenge by virtue of subsection (d). Thus, were we to conclude that appeals to the Board of an intermediary's reopening ultimately must rest upon § 1395oo (a), the Hospital might find solid ground in § 1395oo (d) for appealing matters decided in the original NPR but never revisited since. However, we do not so find.

Section 1395oo does not mention the NPR at all. Instead, it guarantees a provider the right to a Board hearing with respect to the "cost report" filed for any given fiscal year if the provider is dissatisfied with "a final determination of ... its fiscal intermediary ... as to the amount of total program reimbursement due the provider." 42 U.S.C. § 1395oo (a). Of course, after an intermediary issues an NPR, it is fairly straightforward to conclude that the NPR is the intermediary's "final determination ... as to the amount of total program reimbursement." *See Washington Hospital Center v. Bowen,* 795 F.2d 139, 146 (D.C.Cir.1986). Similarly, if an NPR were to be reopened in its entirety and every issue reconsidered and modified, we would presumably have little difficulty locating the final determination of the total reimbursement amount in the revised NPR which was issued upon reopening. However, when an intermediary revisits only certain specified determinations contained in the original NPR and ignores all other items decided in the original NPR, the Statute gives us no indication as to where the final determination of the amount of total program reimbursement is to be located. Part of the final determination is obviously contained in that portion of the original NPR which was never revisited, while the remaining elements are clearly to be found in the reopening decision. Because, then, reopenings of an NPR are not

specifically covered by § 1395oo and because we cannot find them addressed elsewhere in the Statute, it cannot be said that the Statute clearly identifies the reopening decision as the locus of the final determination as to the amount of total program reimbursement.

To be sure, the Ninth Circuit has held that the statutory authorization of reopening is to be found in 42 U.S.C. § 1395x(v)(1)(A)(ii) which mandates that the Secretary's regulations should "provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." *See Oregon on Behalf of Oregon Health Sciences Univ. v. Bowen,* 854 F.2d 346, 349 (9th Cir.1988). But as the Supreme Court and this circuit have held, § 1395x(v)(1)(A)(ii), as reasonably interpreted by the Secretary, is directed at "permitting ... a 'year end book balancing of the monthly installments' with the amount determined to be 'reasonable' under the applicable regulations." *Good Samaritan Hosp. v. Shalala,* — U.S. —, —, 113 S.Ct. 2151, 2156, 124 L.Ed.2d 368 (1993). *See also Hennepin County v. Sullivan,* 883 F.2d 85, 92–93 (D.C.Cir.1989), *cert. denied,* 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990); *accord Mt. Diablo Hosp. v. Shalala,* 3 F.3d 1226 (9th Cir.1993). In other words, the phrase "retroactive corrective adjustments" would appear to refer generally to the reckoning performed (in this case by the fiscal intermediary) at the close of each financial year, when the aggregate amount received by a provider in monthly installments is compared to the "postaudit amounts determined ... to be owed under the methods determining allowable costs." *Good Samaritan,* — U.S. at —, 113 S.Ct. at 2157. Section 1395x(v)(1)(A)(ii) says nothing in particular about *reopening* such year-end determinations. Therefore, we do not believe that the

reopening regulations are specifically based upon § 1395x(v)(1)(A)(ii).

Mindful of the "axiom[ ] that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress," *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), we comfortably locate the Secretary's power to promulgate the reopening regulations in her general rulemaking authority under 42 U.S.C. §§ 1302 & 1395hh.[2] *Cf. Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977) (discussing reopening regulations permitting additional consideration of social security claims beyond that provided for by statute). While HCA argues that the reopening regulations were expressly based upon 42 U.S.C. § 1395oo, a look at the Federal Register reveals that the Secretary cited to §§ 1302, 1395x(v), 1395hh *and* 1395oo as the basis for the reopening regulations. 39 Fed.Reg. 34,514, 34,515 (1974). And even if the Ninth Circuit were correct that § 1395x(v)(1)(A)(ii) provided the ultimate statutory basis for the reopening regulations, that section simply sheds no light on the reviewability of a decision on reopening. *See, e.g., French Hosp. Medical Ctr. v. Shalala,* 841 F.Supp. 1468, 1474 (N.D.Cal.1993) (holding that while reopenings rest upon the statutory authorization in § 1395x(v)(1)(A)(ii), "there is nothing in the statutory authorization for reopening to indicate that the Secretary could not promulgate regulations that limit the scope of appeal of a revised NPR to the revisions that were undertaken").

The language of the Statute itself, then, leaves us in a quandary as to whether a reopening is a "final determination ... as to the amount of total program reimbursement due the provider" within the meaning of § 1395oo (a)(1)(A)(i), to which the rights for

---

2. 42 U.S.C. § 1302(a) provides:
   The Secretary of the Treasury, the Secretary of Labor, and the Secretary of Health and Human Services, respectively, shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which each is charged under this chapter.

42 U.S.C. § 1395hh(a)(1) similarly provides:
   The Secretary [of Health and Human Services] shall prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter.

Board review under subsections 1395oo (a) and (d) should apply.[3] Accordingly, since the Medicare Statute does not specifically address either reopenings of an NPR by an intermediary or review of such a reopening by the Board, we inquire further whether the Secretary's position on the scope of an appeal from a reopening finds adequate footing in the language of the regulations themselves and whether the regulations so understood represent a permissible interpretation of the governing statute.

### 2. *Regulatory Language*

Under the regulations, "[a] determination of an intermediary ... may be reopened with respect to findings on matters at issue in such determination or decision, by such intermediary." 42 C.F.R. § 405.1885(a). Under the wording of this section, then, a reopening does not inevitably extend to the entire NPR, but is restricted to particular "findings on matters at issue" in the original NPR. Appeals rights are similarly circumscribed by the plain language of the reopening regulations which indicate that the "revision shall be considered a *separate and distinct determination* or decision to which the provisions of §§ 405.1811 [right to intermediary hearing], 405.1835 [right to Board hearing], 405.1875 [HCFA Administrator's review] and 405.1877 [judicial review] are applicable." *Id.* at § 405.1889 (emphasis added). The Secretary accordingly maintains that for purposes of Board appeals the revision is "separate and distinct" from the original NPR and that, as a result, appeals of a reopening decision do not extend beyond the revisions themselves.

This is the point at which appellant's argument kicks in. Under 42 C.F.R. § 405.1835 which per § 405.1889 attaches to a revision on reopening, a provider shall have

a right to a hearing before the Board about any matter designated in § 405.1801(a)(1), if:

(1) An intermediary determination has been made with respect to the provider; and

(2) The provider has filed a written request for a hearing before the Board under the provisions described in § 405.1841(a)(1); and

(3) The amount in controversy ... is $10,000 or more.

Appellant argues that because 42 C.F.R. § 405.1801(a)(1) in turn defines "intermediary determination" as "a determination of the amount of total reimbursement due the provider" and because only the *entire* NPR fits that description, appeals on reopening cannot be limited exclusively to the issues revisited on reopening. Furthermore, HCA points to the incorporated 42 C.F.R. § 405.1841(a)(1), which provides in full:

> The request for a Board hearing must be filed in writing with the Board within 180 days of the date the notice of the intermediary's determination was mailed to the provider or, where notice of the determination was not timely rendered, within 180 days after the expiration of the period specified in § 405.1835(c) [12 months after receipt by intermediary of a provider's cost report]. Such request for board hearing must identify the aspects of the determination with which the provider is dissatisfied, explain why the provider believes the determination is incorrect in such particulars, and be accompanied by any documenting evidence the provider considers necessary to support its position. Prior to the commencement of the hearing proceedings, the provider may identify in writing additional aspects of the intermediary's determination with which it is dissatisfied and furnish any documentary evidence in support thereof.

HCA relies on the last sentence of this section to bolster its argument that it may add matters pertaining to the determination of the total amount of reimbursement prior to the Board hearing on appeal of the reopen-

---

**3.** Under subsection (a) a provider may also obtain a Board hearing if the provider is "dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1395ww of this title."

42 U.S.C. § 1395oo (a)(1)(A)(ii). This subsection refers to Board review in connection with an alternative disbursement method not at issue here. *See generally Washington Hosp. Center v. Bowen,* 795 F.2d 139 (D.C.Cir.1986).

ing. Finally, appellant invokes the Board's power under the regulations

> to affirm, modify, or reverse a determination of an intermediary with respect to a cost report and to make any other modifications on matters covered by such cost report ... even though such matters were not considered in the intermediary's determination.

*Id.* at § 405.1869. According to HCA, this section evidences that the Board's jurisdiction over appeals from reopenings is as broad as its authority over appeals from an original NPR.

In light of the explicit language in 42 C.F.R. § 405.1885 limiting reopenings to "findings on matters at issue in [the original NPR]" and in 42 C.F.R. § 405.1889 characterizing revisions as "separate and distinct determination[s]" for purposes of Board appeals, we do not think it impermissible for the Secretary to interpret the "intermediary determination" on reopening as limited to the particular matters revisited on the second go-round. Nor do we find dispositive the final sentence in § 405.1841(a)(1) which permits a provider prior to the Board hearing to "identify ... additional aspects of the intermediary's determination with which it is dissatisfied." Nothing in § 405.1841(a)(1) specifically permits expanding the scope of the Board's inquiry beyond the "intermediary determination" which is on review. Section 405.1841(a)(1), in other words, does not answer the question of whether in post-reopening appeals the "intermediary determination" encompasses the entire NPR or is limited to the specific issues decided on reopening. Even if such appeals are limited to the specific issues on reopening, the last sentence of § 405.1841(a)(1) still finds application as follows: after appealing an intermediary's reopening, a provider is permitted to add other issues also reconsidered on reopening even though the provider had not noted those additional issues in his first petition for appeal from the reopening. Moreover, § 405.1841(a)(1) is aimed principally at replicating the filing requirements, such as the 180–day deadline, for challenges to an intermediary's reopening decision. Section 405.1869 is similarly unilluminating as to the Board's power

of review. While that section tracks the Board's expansive power of review under 42 U.S.C. § 1395*oo* (d), the regulation is cast in general terms and is not necessarily applicable in its entirety to Board reviews of reopening decisions. Section 405.1869 cannot, without more, negate the more narrowly drawn § 405.1889 which is the primary source of the provider's right to appeal a reopening. In sum, even viewing the regulations in the light most favorable to HCA, we find them at best ambiguous and the Secretary's interpretation of the limited scope of appeals from reopenings a permissible one.

### 3. *Purpose and Precedent*

Perhaps the most convincing argument in favor of choosing the Secretary's reading over that urged by HCA is the preservation of the Medicare Statute's 180–day limitation on reviewing an intermediary's determination of total program reimbursement. Under 42 U.S.C. § 1395*oo* (a)(3) a provider must present its challenge of the intermediary's original NPR to the Board within 180 days of notice of the NPR. If a provider permits that deadline to lapse, the Statute envisions no further appeal of the intermediary's decision. Nonetheless, HCA urges us to allow an appeal to matters not addressed since the original NPR, despite the fact that the 180–day period to appeal the initial NPR has long since passed. HCA contends that the Secretary must ignore the statutory appeals deadline solely because certain aspects of the NPR have been reopened. We reject that position. To subscribe to HCA's argument truly "would frustrate the congressional purpose, plainly evidenced in [the statute], to impose a [time] limitation upon ... review." *Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). To paraphrase the *Califano* Court here: "Congress' determination so to limit judicial review to the original decision denying [a greater amount of total program reimbursement] is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. Our duty [and the Secretary's], of course, is to respect that choice." *Id.* By preserving the 180–day limitation on appeals from the intermediary's original NPR, the Secretary's reading be-

comes particularly persuasive. Largely for this reason, this issue-specific reading of appeals rights after reopening has been upheld by a number of courts. *See, e.g., Albert Einstein Medical Ctr. v. Sullivan,* 830 F.Supp. 846 (E.D.Pa.1992), *aff'd,* 6 F.3d 778 (3d Cir.1993); *Delaware County Memorial Hosp. v. Sullivan,* 836 F.Supp. 238 (E.D.Pa. 1991); *French Hosp. Medical Ctr. v. Shalala,* 841 F.Supp. 1468 (N.D.Cal.1993). *But see Minnesota Hosp. Ass'n v. Bowen,* 703 F.Supp. 780 (D.Minn.1988). In dicta we, too, have looked favorably upon the issue-specific nature of post-reopening appeals under the Secretary's regulations. *See Saint Mary of Nazareth Hosp. Ctr. v. Schweiker,* 741 F.2d 1447, 1449 (D.C.Cir.1984); *Athens Community Hosp. v. Schweiker,* 743 F.2d 1, 7–8 (D.C.Cir.1984).[4] As the Supreme Court said in *Good Samaritan Hosp. v. Shalala,* —— U.S. ——, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993), "[w]e should be especially reluctant to reject the agency's current view which, as we see it, so closely fits 'the design of the statute as a whole and ... its object and policy.' " *Id.* at ——, 113 S.Ct. at 2161 (quoting *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990)).

We must also reject petitioner's reliance on the Seventh Circuit's holding in *Edgewater Hospital, Inc. v. Bowen,* 857 F.2d 1123 (7th Cir.), *modified,* 866 F.2d 228 (1988). In that case a provider had petitioned the intermediary to reopen the NPR with regard to four cost items, one of which was ultimately revised. The court held that the Board had jurisdiction to review not only the modified cost item, but also the other three, because the decision not to modify the other three was "itself ... a reconsideration." 857 F.2d at 1135. We need not decide today whether a cost item must be modified on reopening or need only be reconsidered on reopening in order to become appealable to the Board. In contrast to *Edgewater,* here none of the issues for which HCA now demands expanded Board review were reconsidered on reopen-

ing. The reopening here was initiated solely by the intermediary and the intermediary's notices of reopening made no reference whatsoever to the cost items which the provider now wishes to add to its hearing before the Board.

Finally, HCA can find no refuge in the agency adjudications it cites. To be sure, a 1973 agency letter proclaimed that "[t]he provider may raise any issue with regard to the cost report in the hearing even though a particular issue was not dealt with in the reopening." Department of Health, Education, and Welfare, Social Security Administration, Part A Intermediary Letter No. 73–22 (June 1973), *reprinted in* Addendum to Appellant's Brief at 17. But this decision predates the creation of the Board and addresses hearings before an intermediary hearing officer—not hearings before the Board. Similarly, the Secretary's current position on the issue-specific nature of reopening appeals is not foreclosed by the HCFA Administrator's decision in *St. Mary's Hospital v. Blue Cross/Blue Shield Association,* HCFA Administrator Decision (May 19, 1983) (review of Board decision No. 82–71), *reprinted in* Addendum to Appellant's Brief at 18. In that case the Board had combined a provider's regular appeal from an NPR for one fiscal year with an appeal from the reopening of a cost item for the prior fiscal year. Before the scheduled hearing, the provider sought to expand its appeal from reopening to include an additional cost item that had not been the subject of reopening. The added cost item involved the same category of costs that the provider was challenging in its regular appeal with regard to the later fiscal year. The Board denied the request to expand the reopening appeal on the basis that the disputed cost item had not been revisited since issuance of the original NPR and that time to appeal determinations settled in the original NPR had run out. The HCFA Administrator reversed. Draw-

---

4. Although the Supreme Court's decision in *Bethesda Hospital Association v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988), may have undercut the validity of the holdings in *St. Mary* and *Athens* which limited Board appeals from an NPR to cost items originally presented to the intermediary, the dictum in those cases regarding the reopening regulations is largely unaffected. *See also Memorial Hosp. v. Sullivan,* 779 F.Supp. 1406, 1408–09 (D.D.C.1991) ("it is clear that *Bethesda* does not require the Court of Appeals to rescind its interpretation of the reopening regulations").

ing on 42 C.F.R. § 405.1841(a) and 42 U.S.C. § 1395oo (d), the Administrator concluded that when an intermediary reopens an NPR "it is the cost year that is open and not the individual issue." *Id.* at 3, Addendum to Appellant's Brief at 20. The Administrator noted that "a provider may have decided that the legal expense of appealing the [original NPR] outweighed the benefits of an appeal[, but that] with additional amounts in dispute from a revised NPR, an appeal may appear prudent to a provider." *Id.* at 4, Addendum to Appellant's Brief at 21. In addition, however, the Administrator specifically noted that the disputed cost item at issue in that case could not have been appealed from the original NPR because it did not satisfy the $10,000 jurisdictional threshold. *Id.* Moreover, since that cost item "was already before the Board on another cost year" the Administrator found "that the facts in this case should not cause any surprise or administrative inconvenience." *Id.* Finally, the Administrator warned:

> In another context, the broad wording of the regulation, allowing additional issues to be added to a Board case prior to the hearing [of the reopening appeal], may have to be tempered. A party to an appeal should not be allowed to add totally unrelated issues to the appeal at the last minute.

*Id.* The rule enunciated in this decision, then, was not so broad as to settle the question we confront today. In addition to its explicit caution that rights to appeal from a reopening may have to be "tempered" in the future, the decision might well be limited to a scenario in which the cost item to be added to the reopening appeal could not have been appealed when the original NPR was issued because it did not satisfy the $10,000 jurisdictional threshold, a situation we do not face here.[5]

The scope of appeals rights was clarified in a subsequent decision in which the HCFA Administrator expressly held that hearing rights before the Board challenging an intermediary's decision on reopening are issue specific: "The 'separate and distinct determination' gives a right to a hearing on the matters corrected by such determination. Thus, a revised NPR does not reopen the entire cost report to appeal. It merely reopens those matters adjusted by the revised NPR." *General Hospital of Everett v. Blue Cross and Blue Shield Ass'n,* Medicare & Medicaid Guide (CCH) ¶ 35,926 (HCFA Adm'r Decision May 19, 1986), *reprinted in* Addendum to Appellee's Brief at 27, 28. Thus, in March 1988 when HCA received notice of the intermediary's determination regarding FY 1985, the Secretary's position was clear.

### III.  CONCLUSION

Given that no specific statutory provision governs reopenings, and that the Secretary's interpretation of the reopening regulations is a permissible reading of the regulatory language and implements the statutory time restriction on appeals from an intermediary's determination of the amount of total program reimbursement, we uphold the Board's determination that it lacked jurisdiction to review cost items that were not the subject of the reopening. The judgment of the district court is therefore

*Affirmed.*

---

**5.**  Board review of the entire NPR after reopening would thus prevent a piecemeal downward revision of an NPR in increments of less than $10,-000, by which the intermediary might evade Board review altogether. HCA, however, has made no argument that its appeals rights under the statute were thwarted in this manner. When asked at oral argument whether any cost item for which HCA now seeks Board review would have been previously barred by the $10,000 threshold, counsel for HCA responded: "No Sir. Each of them exceeds [$]10,000."