# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 24, 2022          Decided April 8, 2022

No. 21-5117

ST. HELENA CLEAR LAKE HOSPITAL, DOING BUSINESS AS
ADVENTIST HEALTH CLEAR LAKE,
APPELLANT

v.

XAVIER BECERRA, SECRETARY, U.S. DEPARTMENT OF HEALTH
AND HUMAN SERVICES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00141)

———

*Kelly A. Carroll* argued the cause for appellant. With her on the briefs were *Robert L. Roth* and *Patric Hooper*.

*Kyle T. Edwards*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Brian M. Boynton*, Acting Assistant Attorney General, *Michael S. Raab*, Attorney, *Janice L. Hoffman*, Associate General Counsel, U.S. Department of Health & Human Services, and *Susan Maxson Lyons*, Deputy Associate General Counsel for Litigation.

Before: WILKINS and KATSAS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Appellant, a small California hospital, claims it should be compensated under Medicare for the cost of keeping various specialty doctors on call. The Secretary of the Department of Health and Human Services rejected that claim based on an interpretation of a governing regulation. The district court affirmed the Secretary's decision and we agree.

I.

Faced with the high number of closures of rural hospitals, Congress created the special designation of "critical access hospitals." That refers to certain rural hospitals that provide 24-hour emergency services located far from other hospitals. They are limited to 25 inpatient beds and may not provide inpatient care—beyond emergency room treatment—for more than 96 hours (on the average). 42 U.S.C. § 1395i-4(c)(2)(B)(iii). Patients more persistently ill are expected to be transferred to larger hospitals. *See id*. St. Helena is one of these critical access hospitals.

Unlike ordinary hospitals, which have Medicare costs reimbursed based on a fixed fee schedule set by the Secretary of Health and Human Services, critical access hospitals are treated more favorably. They are reimbursed for 101% of their "reasonable costs" in providing patient services. 42 U.S.C. §§ 1395f(l)(1), 1395m(g)(1).

The Secretary has a long-term practice of denying Medicare reimbursement to compensate doctors for being "on call." 63 Fed. Reg. 26,318, 26,353 (May 12, 1998). However, Congress intervened in 2000. It passed legislation authorizing *emergency room* doctors in critical access hospitals to be paid for on-call time.[1] 42 U.S.C. § 1395m(g)(5). The Secretary, who has broad authority to issue regulations interpreting Medicare, issued a regulation essentially tracking the statute. 42 C.F.R. § 413.70(b)(4) (hereinafter referred to as the "key regulation").

St. Helena, nonetheless, applied for Medicare reimbursements for on-call costs it paid to non-emergency room specialists in surgery, obstetrics, pediatrics, and cardiology. It claimed that its on-call costs for inpatient care, just as for emergency room care, are "necessary and proper" under another Department regulation and therefore are, perforce, reasonable. *See* 42 C.F.R. § 413.9(a). St. Helena's Medicare contractor, who administers St. Helena's Medicare reimbursements, denied the request asserting that non-emergency room on-call costs were not reimbursable. St. Helena then appealed to the Provider Reimbursement Review Board.

Before the Board, St. Helena argued that it was required by the federal Emergency Medical Treatment and Active Labor Act, 42 U.S.C. §§ 1395dd, and California law to incur those on-call costs. The Board rejected these arguments and explained that the Secretary's key regulation implicitly prohibits St. Helena's requested reimbursement because it only

---

[1] Congress later added physician assistants, nurse practitioners, and clinical nurse specialists to the list of emergency medical staff whose on-call costs could be reimbursed by Medicare. Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-183, 117 Stat. 2066, 2266.

allowed the reimbursement of on-call costs for the emergency room. The Administrator of the Centers for Medicare & Medicaid Services, to whom the Secretary delegated authority to review the Board, declined to review the decision, which became the Secretary's final action. St. Helena then appealed to the district court, which granted the Secretary's motion for summary judgment, essentially affirming the Secretary.

## II.

Appellant reiterates the arguments presented both to the Board and the district court. It offers both evidentiary and legal grounds to show that it was necessary and proper, and therefore reasonable, to pay on-call costs for *all* doctors—not just emergency room doctors.

When Appellant sought reimbursement, it entered into a stipulation with its contractor to the effect that it could not comply with its obligations without paying on-call specialists for inpatient services. But as we have previously held, the contractor is not the government and therefore the Secretary is not bound by any such stipulation. *See Appalachian Reg'l Healthcare, Inc. v. Shalala*, 131 F.3d 1050, 1053 n.4 (D.C. Cir. 1997). In any event, the stipulation of fact assumes a legal conclusion—that the hospital is obliged to provide such extensive inpatient services.

The parties agree that critical access hospitals have an obligation to treat patients under federal law—at least for a short time—after emergency room treatment. That obligation apparently stems from the federal Emergency Medical Treatment and Active Labor Act, which requires hospitals providing emergency room service to "stabilize" patients before releasing them or transferring them to a large hospital. 42 U.S.C. §§ 1395dd(b), (c); *see also* 42 C.F.R. § 489.24.

5

Appellant also points to another Departmental regulation which obliges all participating Medicare hospitals to comply with state laws. 42 C.F.R. § 485.608. And it asserts California law requires all hospitals to provide various specialty services, particularly surgery. It is claimed that Appellant cannot comply with both federal and state obligations unless it can pay on-call compensation to specialists in surgery, obstetrics, pediatrics, and cardiology.

We agree with the Secretary that the federal obligation to stabilize patients coming from an emergency room does not necessarily imply the need for various specialists. In that regard, the Board reasonably concluded that since emergency room doctors were readily available, they would have sufficient capability to stabilize patients for transfer if necessary.[2]

Appellant and the Secretary disagree as to whether, under California law, St. Helena must provide obstetrics, pediatrics, and cardiology services. *See* Cal. Code Regs. Tit. 22 § 70067. But regardless of whether St. Helena is obligated to provide those services, California law allows Appellant to make use of "alternate . . . personal qualifications" in providing those services. Cal. Code Regs. Tit. 22 § 70307(a). Thus, the requirements governing obstetrics, pediatrics, and cardiology services can be met with non-specialists with requisite experience. *Id.*; *see also* Cal. Code Regs. Tit. 22, § 70435(a), 70539(a), 70549(a). Nor is the Secretary bound by the cases Appellant cited in which the California Department of Healthcare Services concluded that Appellant's expenditures

---

[2] Appellant argues that separate regulations discourage transfers to other hospitals. But that regulation simply discourages unnecessary transfers. 78 Fed. Reg. 50,496, 50,751.

were reimbursable under the state's Medi-Cal program. An authorized expenditure is not the same as a requirement.

To be sure, Appellant makes a strong argument that California law could be read, with a bit of a stretch, to oblige critical access hospitals to have a surgeon on call. Cal. Code Regs. Tit. 22, § 70225(a). On the other hand, the California statute does provide that its requirements could be satisfied by someone with surgical training. *Id*. It therefore seems reasonable for the Board to conclude that St. Helena had available emergency room doctors who would have sufficient surgical training to meet the state requirements.

* * *

In any event, even if Appellant's reading of California law were persuasive, Appellant conceded at oral argument that if the key regulation was legitimately interpreted by the Board, that would be the end of the matter. We think that is exactly the situation here. The statute and the regulation specifically address on-call costs only for emergency room physicians. 42 U.S.C. § 1395m(g)(5); 42 C.F.R. § 413.70(b)(4). The legislative maxim *expressio unius est exclusio alterius* therefore comes into play.

The maxim is particularly applicable here because it is undeniable that the Secretary had a *de facto* policy prior to the passage of the key legislation whereby all physician on-call costs were disallowed. Indeed, in a Q&A section accompanying a regulation clarifying Medicare reimbursements, the Secretary explained that Medicare did not recognize "costs of 'on-call' physicians as allowable costs of operating a [critical access hospital]." 63 Fed. Reg. at 26,353. Thereafter, Congress intervened. It seems obvious, therefore, that Congress acted because of its understanding of the

Secretary's policy. Moreover, the preamble of the *critical* key regulation also described this policy, which the statute and regulation modified for emergency room physicians. 66 Fed. Reg. 39,828, 39,922.

To be sure, Appellant challenges any recognition of the prior policy of not paying on-call costs because another provision of the Medicare statute, 42 U.S.C. § 1395hh(a)(2), precludes the Secretary from establishing or changing cost policy without using notice-and-comment rulemaking and the preamble of the regulation is not adequate to constitute legal rulemaking. That is a troubling argument and, if correct, it does at least cast doubt on the legality of the policy before Congress acted. Still, although we have held that the preamble of a regulation does not have quasi-legislative bite, in other words it is not part of the legal requirement of the regulation, *AT&T Corp. v. Fed. Commc'ns Comm'n*, 970 F.3d 344, 350–351 (D.C. Cir. 2020), the preamble of the key regulation can be used to explain the regulation even if the pre-existing policy turned out to be legally defective.

So even if invalid, the *de facto* policy can still be referred to in interpreting the statute Congress passed in 2000 (and by extension what the Secretary meant in the implementing regulation). Certainly, Congress thought that the Secretary's policy of refusing to pay physicians' on-call expenditures was controlling, otherwise it would not have passed 42 U.S.C. § 1395m(g)(5) allowing on-call payments for emergency room doctors. Indeed, if Appellant's legal position is correct, it would have been wholly unnecessary for Congress to have passed the statute dealing with emergency room doctors; *all* expenses for on-call doctors at critical access hospitals would have been reimbursable.

In sum, it is at least reasonable to read the key regulation as precluding a policy change extending beyond on-call emergency room physicians.[3]  And therefore we should defer to the Secretary's interpretation.  *See Auer v. Robbins*, 519 U.S. 452 (1997); *Chevron v. Nat. Res. Def. Council*, 467 U.S. 837 (1984) (both *Chevron* and *Auer* are relevant precedents since as, we've noted, the regulation closely tracks the statute); *see also St. Luke Cmty. Health Care v. Sebelius*, No. CV 09-92-M-DWM, 2010 WL 1839405 (D. Mont. May 5, 2010) (deferring to the Secretary's determination that on-call nurse anesthetist costs are not reimbursable because nurse anesthetists are not mentioned in the key regulation).

Yet, Appellant argues that we should not defer to the Board's interpretation of the regulation because the decision was made by the Board rather than the Secretary.  The district court, however, was quite correct to reject that argument and defer to the Board's interpretation of its regulation because the Secretary had ratified the Board's interpretation by refusing to reverse or modify it.  *HCA Health Servs. of Oklahoma, Inc. v. Shalala*, 27 F.3d 614, 616 n.1 (D.C. Cir. 1994).

* * *

For the reasons we set forth above, we affirm the district court.

---

[3] Appellant suggests an alternative reading that the key regulation is limited to the outpatient, as opposed to inpatient, context.  Even if that interpretation was plausible, it would not be enough to overcome the Board's alternative reasonable interpretation.