## SAINT VINCENT HEALTH CENTER, Plaintiff,

v.

Donna E. SHALALA, Secretary, Department of Health and Human Services; Bruce Vladeck, Administrator, Health Care Financing Administration; and Richard C. Rinschler, Director, Provider Audit, Blue Cross of Western Pennsylvania, Defendants.

Civil Action No. 92–373 Erie.

United States District Court, W.D. Pennsylvania.

Dec. 22, 1995.

Melinda J. Roberts, Stephen P. Nash, Jacqueline O. Shogan, Ann G. Mathias, and David W. Thomas, Nash & Company, Pittsburgh, PA, for plaintiff.

Robert R. Leight, Pietragallo, Bosick & Gordon and Paul E. Skirtich, United States Attorney's Office, Pittsburgh, PA, for defendants.

## *MEMORANDUM*

McLAUGHLIN, District Judge.

Plaintiff Saint Vincent Health Center ("SVHC") operates a hospital in Erie, Pennsylvania. It brings this action to compel a reopening of the notices of program reimbursement ("NPRs") by which it was reimbursed under the Medicare program for services provided in certain units of the hospital during fiscal years 1986, 1987, 1988, and 1989. Defendants include the Secretary of Health and Human Services ("Secretary"), an official of the Health Care Financing Administration ("HCFA"), and an official of Blue Cross of Western Pennsylvania ("Blue Cross"). SVHC asserts that this Court has jurisdiction over this action under 42 U.S.C. § 1395*oo* and 28 U.S.C. §§ 1331, 1361, and 1367. Defendants have moved to dismiss or, in the alternative, for summary judgment. For the reasons that follow, this motion will be granted and this action will be dismissed.

## I. *BACKGROUND*

### A. *Statutory and Regulatory Framework* [1]

This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395ccc (the "Medicare Act"), which establishes Medicare health insurance for the elderly and the disabled. HCFA, a division of the Department of Health and Human Services ("HHS"), administers the Medicare

---

1. Portions of this description are taken from *Good Samaritan Hospital Regional Medical Center v. Shalala,* 894 F.Supp. 683, 685–86 (S.D.N.Y. 1995) and *Binghamton General Hospital v. Shalala,* 856 F.Supp. 786, 789–90 (S.D.N.Y.1994).

program. Medicare has two main parts: Part A, which provides insurance for inpatient institutional services, home health services, and post-hospital services, *id.* at §§ 1395c to 1395i–4, and Part B, which covers physician, outpatient hospital, and various other health services, *id.* at §§ 1395j to 1395w–4.

A hospital or skilled nursing facility may participate in Part A of the Medicare program by entering into a "provider agreement" with the Secretary. *Id.* at § 1395h. Under these agreements, participating providers, such as SVHC, give care to persons covered by Medicare and seek reimbursement from private insurance companies ("fiscal intermediaries"), such as Blue Cross, that act as agents of the Secretary. The fiscal intermediaries are in turn reimbursed by HCFA. *Id.;* 42 C.F.R Part 421.

Prior to 1982, Medicare provided Part A reimbursement to providers on the basis of either the "reasonable cost" of furnishing covered services to Medicare beneficiaries or the hospital's customary charge for a particular service, whichever was lower. 42 U.S.C. § 1395f(b)(1). A different methodology was adopted from 1982 to 1983 under the Tax Equity and Fiscal Responsibility Act of 1982 "(TEFRA") § 101, Pub.L. No. 97–248, 96 Stat. 324, 331–36. Since October 1, 1983, however, reimbursement for most Medicare services has been provided under the Prospective Payment System ("PPS"), under which hospitals are reimbursed for their treatment of Medicare beneficiaries on the basis of prospectively determined national and regional rates, rather than the reasonable operating costs of each institution. *See* 42 U.S.C. § 1395ww(d).

However, certain hospitals and distinct part units of hospitals—generally, psychiatric or rehabilitation hospitals or units or other hospitals and units with long patient stays—are exempted from PPS and are still reimbursed under the TEFRA system. *Id.* at § 1395ww(d)(1)(B); 42 C.F.R. Part 412, Subpart B. Under TEFRA, a hospital's or unit's reimbursement is determined by reference to a "target amount." A base year amount is calculated by dividing the hospital's or unit's allowable inpatient operating costs for the year preceding its TEFRA designation by the total number of discharges. 42 C.F.R. § 413.40(b)(1), (c)(2). The base year amount is then increased by a percentage to obtain the target amount for each subsequent year. 42 U.S.C. § 1395ww(b). Costs in excess of the target amount are not fully reimbursed. However, should the provider's actual cost fall below the target amount, the provider receives some portion of this difference. 42 C.F.R. § 413.40(d).

In order to receive reimbursement under Part A, a provider must file an annual cost report with its fiscal intermediary, detailing the services rendered to Medicare patients during the year. 42 C.F.R. § 413.20. The intermediary analyzes the report and issues a "notice of program reimbursement" ("NPR"), which sets forth the total amount of reimbursement due the provider and lists the individual expenses allowed and disallowed. *Id.* at 405.1803.

A provider may appeal a decision of the intermediary to HCFA's Provider Reimbursement Review Board ("PRRB") no more than "180 days after notice of the intermediary's final determination" if the amount in controversy is at least $10,000 and

(1) such provider—

(A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary pursuant to section 1395h of this title as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by the report, or

(ii) is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1395ww of this title,

(B) has not received such final determination from such intermediary on a timely basis after filing such report, where such report complied with the rules and regulations of the Secretary relating to such report, or

(C) has not received such final determination on a timely basis after filing a supplementary cost report, where such cost

report did not so comply and such supplementary cost report did so comply[.]

*Id.* at § 1395oo(a). The PRRB may then conduct a hearing and reverse, affirm, or modify the decision of the intermediary. *Id.* at § 1395oo(d). The Secretary may then, on her own motion, review the PRRB decision. *Id.* at § 1395oo(f)(1). The final determination, whether of the PRRB or of the Secretary, is then subject to review in an appropriate United States district court. *Id.*

Under 42 U.S.C. § 1395ii, district court actions under the Medicare Act are limited in the same manner that 42 U.S.C. § 405(h) limits actions under chapter II of Social Security Act:

No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

*Id.* at § 405(h).

A hospital or unit reimbursed under TEFRA may request an adjustment to its base year amount or target amounts. *Id.* at § 1395ww(b)(4); 42 C.F.R. § 413.40(e). This request "may be made upon receipt of the intermediary's notice of amount of program reimbursement (NPR) and must be made no later than 180 days after the date on the intermediary's NPR for the cost period for which the hospital requests an adjustment." 42 C.F.R. § 413.40(e)(1). The decision whether to grant this request is then made by HCFA or by the intermediary if it has been delegated to do so. It is then subject to review by the PRRB and the courts in a manner similar to that for the original NPR. *Id.* at § 413.40(e)(2)–(5).

Finally, the Secretary has promulgated reopening regulations whereby a determination of an intermediary may be reconsidered. A request to reopen must be made within three years of the date of notice of the intermediary determination unless "it is established that such determination or decision was procured by fraud or similar fault of any party to the determination or decision." *Id.* at

405.1885(a), (d). An NPR changed pursuant to reopening is subject to review in the same manner as an original NPR. *Id.* at § 1889.

**B. *Procedural History***

Among the units at SVHC are a drug & alcohol unit, a psychiatric unit, and a rehabilitation unit. Medicare reimbursed SVHC under TEFRA for services provided in FYs 1986 to 1989 in the rehabilitation and psychiatric units and for services provided in FYs 1987 to 1989 in the drug & alcohol unit. The base year for the psychiatric and rehabilitation units was FY 1985; the base year for the drug & alcohol unit was FY 1986. These base year costs were used in determining Part A reimbursements for the three units for FYs 1986 to 1989.

SVHC alleges that the calculation of these base year levels and their subsequent use in determining TEFRA target amounts led to insufficient reimbursement for these units for FY 1986 to 1989. It seeks a total of $1,340,-259 in additional reimbursement. Amended Complaint at ¶ 53. SVHC identifies several problems with the amounts. First, SVHC alleges that, as a result of a correction to its cost reports directed by Blue Cross, the base year amount for its psychiatric unit was not representative of the unit's actual costs and was not an appropriate guideline for determination of Medicare reimbursement for the unit in FYs 1986 to 1989. *Id.* at ¶¶ 32–33. Second, SVHC alleges that certain mental health service costs that should have been allocated to the drug & alcohol and psychiatric units in FY 1986 were instead allocated to the rehabilitation unit, resulting in an improperly low base-year amount for the drug & alcohol unit and improper reimbursement amounts for the other two units during that fiscal year. *Id.* at ¶ 34. Third, SVHC alleges a general increase in patient acuity and comorbidity.

The NPR for FY 1986 was issued on August 22, 1988 and revised on March 6, 1989. The NPR for FY 1987 was issued on September 5, 1989 and revised on January 24, 1990. The NPR for FY 1988 was issued on April 25, 1990. The NPR for FY 1989 was issued on April 4, 1991. Amended Complaint at

¶ 35. All four NPRs were revised on September 24, 1991 to account for changes in the manner in which Medicare reimbursed providers for the costs of malpractice insurance. *See* Ex. E to Amended Complaint at 2.

SVHC filed an application with Blue Cross for adjustment of the base year amounts for these three units on March 23, 1992. SVHC argued that this application was made within 180 days of the September 1991 revisions to the NPRs. Amended Complaint at ¶ 36; *see* Exs. C & D to Amended Complaint. On June 2, 1992, Blue Cross forwarded this application to HCFA with a recommendation stating that the application should be denied because it had not been made within 180 days of the issuance of any of the original NPRs for the fiscal years involved. Blue Cross informed SVHC on September 15, 1992 that the adjustment application had been rejected by HCFA for failure to adhere to the "required time frames for submitting appeals" under 42 C.F.R. § 413.40. Amended Complaint at ¶¶ 48–49; *see* Exs. G & H to Amended Complaint.

On September 4, 1992, SVHC applied to Blue Cross for reopening of its NPRs for FYs 1986 to 1989 "for the specific purpose of submitting TEFRA Adjustment Applications for these cost years." Amended Complaint at ¶ 45; *see* Ex. F to Amended Complaint. Blue Cross rejected this application on September 21, 1992, stating in part:

> All reports except 1989 are past three years of cost delivery date. We do not believe this document presents any new or material information nor does it relate to a clear or obvious error o[n] the part of the provider or fiscal intermediary. We, therefore, see no cause to reopen these cost reports, nor accept an amended report.

Ex. I to Amended Complaint at 2.

On March 9, 1993, St. Vincent filed its request for a hearing before the PRRB on Blue Cross's decision not to reopen the cost reports for any of the four fiscal years. The appeals with regard to FYs 1987 and 1988 were consolidated with SVHC's other, unrelated pending appeals of its reimbursement

for those years. The appeals with regard to FYs 1986 and 1989 were dismissed by order of April 28, 1993:

> The Board finds that 42 C.F.R. § 405.1885(c) governs the review of a denial to reopen cost reports. Section 405.1885(c) states that jurisdiction for reopening a determination rests exclusively with the administrative body that rendered the last determination. Since the Intermediary was the administrative body that rendered the last determination, it is the Intermediary's decision whether or not to reopen the cost reports.
>
> Consequently, the Board finds that it does not have jurisdiction over the reopening determination and hereby dismisses this issue from the case. Review of this decision is available under the provisions of 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. §§ 405.1875 and .1877. However, HCFA's Attorney Advisor has ruled that it is not appropriate for the Administrator to review a jurisdictional determination while there are other matters in the case pending appeal. After all the issues before the Board have been concluded, you may request review of this determination.

Amended Complaint at ¶ 57; Ex. K to Amended Complaint at 1. Blue Cross subsequently filed motions with the PRRB to dismiss SVHC's appeals with regard to the FY 1987 and 1988 cost reports. Amended Complaint at ¶¶ 58–59; *see* Exs. L & M to Amended Complaint. Although these motions were pending at the time that the Amended Complaint in this action was filed, SVHC stated that it expected the PRRB to grant the motions and dismiss those appeals, as well. Amended Complaint at ¶ 60.[2]

SVHC commenced this action on November 17, 1992. Defendants filed a motion to dismiss, which was granted in part and denied in part by the Honorable William L. Standish of this Court on October 14, 1994. SVHC filed its Amended Complaint on February 14, 1995, and this motion followed.

## II. *STANDARD OF REVIEW*

 Defendants' motion to dismiss is based in part on F.R.Civ.P. 12(b)(1) due to

---

**2.** Defendants do not allege that SVHC has failed to exhaust its administrative remedies.

this Court's alleged lack of subject matter jurisdiction and in part on F.R.Civ.P. 12(b)(6) due to SVHC's alleged failure to state a claim on which relief can be granted. The standards to be applied to these bases are not identical:

> Dismissal for lack of subject matter jurisdiction is not appropriate on the ground that a complaint fails to state a claim upon which relief can be granted, but only if the right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Growth Horizons[, Inc. v. Delaware County, Pa.]*, 983 F.2d [1277,] 1280–81 [ (3d Cir.1993) ] (quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974)). "The threshold to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(1) is thus lower than that required to [with]stand a Rule 12(b)(6) motion." *Lunderstadt v. Colafella,* 885 F.2d 66, 70 (3d Cir.1989).

*Bonnett Enterprises, Inc. v. United States,* 889 F.Supp. 208, 209–10 (W.D.Pa.1995). A plaintiff bears the burden of persuasion on a motion under Rule 12(b)(1). *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

On a motion to dismiss under Rule 12(b)(6), this Court accepts as true all factual allegations in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 163–65, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993). The proper inquiry is "whether relief could be granted . . . 'under any set of facts that could be proved consistent with the allegations.' " *Gasoline Sales, Inc. v. Aero Oil Co.,* 39 F.3d 70, 71 (3d Cir.1994) (quoting *National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 256, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994)). If no cause of action can be identified, dismissal is proper.

## III. *DISCUSSION*

The Amended Complaint contains four counts. In Count I, SVHC seeks to have this Court direct the PRRB, through the Secretary, to assume jurisdiction and review the decision of Blue Cross not to reopen the cost reports. In the alternative, SVHC asks this Court to direct Blue Cross to reopen the cost reports. SVHC asserts that this Court has jurisdiction over this action under 42 U.S.C. § 1395*oo* and 28 U.S.C. §§ 1331 (general federal question jurisdiction) and 1361 (mandamus jurisdiction). In Count II, SVHC seeks a declaratory judgment under 28 U.S.C. § 2201 stating that the PRRB has jurisdiction to review the merits of the denial of the application to reopen. In Count III, SVHC seeks a writ of mandamus, also directing the PRRB to review the merits of the denial. Finally, in Count IV, SVHC alleges violations of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

Defendants first argue that this Court's review is confined to that prescribed in 42 U.S.C. § 1395*oo*(f)(1). They assert that neither general federal question jurisdiction, mandamus jurisdiction, nor any other alternate source of jurisdiction is available here. Second, Defendants submit that, under § 1395*oo*(f)(1), the policy of the Secretary that was applied here survives review. Both of these arguments are correct. Therefore, this Court will grant Defendants' motion.

### A. *Does this Court have Subject–Matter Jurisdiction over this Action on Any Basis Other than 42 U.S.C. § 1395oo(f)(1)*

Defendants first argue that this Court is without jurisdiction to consider any of the Amended Complaint except for that portion seeking review under § 1395*oo* of the PRRB's ruling that it lacked jurisdiction to review the decision of Blue Cross not to reopen the NPRs.

Defendants are correct. This issue is controlled by *St. Francis Medical Center v. Shalala,* 32 F.3d 805 (3d Cir.1994) ("*St. Francis*"). In that case, the plaintiff applied for an adjustment to the TEFRA base year amount for its rehabilitation unit. HCFA rejected the application, and the PRRB declined to review that decision on the basis that the dispute had not met the $10,000 amount-in-controversy jurisdictional requirement of § 1395*oo*(a). *Id.* at 807–08. The district court reversed this determination but

was in turn reversed on appeal. *See St. Francis Medical Center v. Sullivan*, 962 F.2d 1110 (3d Cir.1992). The Third Circuit agreed that the PRRB had lacked jurisdiction under § 1395oo to review HCFA's decision but remanded the action to the district court with directions to consider whether that court had jurisdiction of the matter under 28 U.S.C. § 1331. *Id.* at 1114–17. On remand, the district court concluded that it did not have § 1331 jurisdiction and dismissed the action. *St. Francis*, 32 F.3d at 809.

The court of appeals agreed that § 1331 did not provide a basis on which to review HCFA's decision. The court looked to two lines of Supreme Court cases and held that, regardless of which line was followed, the district court's decision was correct. Therefore, the court did not determine which line provided the appropriate analytical framework.

The first line of cases, which included *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) and *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), held that persons who wished to challenge the Secretary's denial of their claims for Social Security benefits were required by 42 U.S.C. § 405(h) to proceed under the right of action created by the Social Security Act, *see id.* at § 405(g), regardless of the statutory, procedural, or constitutional nature of their challenge. *St. Francis*, 32 F.3d at 810–11. "Instead of invoking 28 U.S.C. § 1331 or the mandamus statute, the Court held, claimants wishing to challenge the Secretary's ... policy were required to proceed under § 405(g)." *Id.* at 811 (citing *Ringer*, 466 U.S. at 617, 104 S.Ct. at 2022–23). If this line were followed, the court noted, the plaintiff's action, which arose under the Medicare Act, could proceed only under § 1395oo(f) and not under § 1331. *Id.*

The *Salfi–Ringer* line, as construed in *St. Francis*, would foreclose any avenue of jurisdiction here other than 1395oo(f). This case clearly arises under the Medicare Act, as that act "provides 'both the standing and

substantive basis' " for Plaintiff's claims. *See id.* (quoting *Salfi*, 422 U.S. at 761, 95 S.Ct. at 2464–65). Thus, neither mandamus nor § 1331 jurisdiction would be appropriate here. Plaintiff's claims, regardless of their nature, would be reviewable by this Court only under the procedure provided in the Medicare Act and only if presented to the PRRB.

The second line of cases to which the *St. Francis* court pointed included *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) and *United States v. Erika, Inc.*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982). *Id.* at 811–14. Both cases involved claims made with respect to Part B of Medicare. In *Erika*, the Court held that the Part B insurance carrier's determination of the amount of an award was not subject to judicial review. 456 U.S. at 206, 102 S.Ct. at 1653. In *Michigan Academy*, however, the Court held that *Erika*'s proscription on judicial review did not apply to all actions taken under Part B and did not bar challenges to the Secretary's regulations or other matters controlling the manner in which Part B award amounts are determined. 476 U.S. at 675, 106 S.Ct. at 2138. The Court identified a "strong presumption that Congress intends judicial review of administrative action," *id.* at 670, 106 S.Ct. at 2135, and found that the legislative history on which it had relied in *Erika* did not overcome that presumption on the facts before it, *id.* at 676–77, 106 S.Ct. at 2138–39.

The *St. Francis* court noted that in the case before it, in contrast to the situation in *Michigan Academy* and *Erika*, "the Medicare Act provides avenues by which a provider seeking Part A payments may contest both the amounts of its payments and the methods by which those payments are calculated." 32 F.3d at 812 (citing § 1395oo(f)(1)). *Michigan Academy*, therefore, addresses the availability of bases of federal court jurisdiction external to the Medicare Act *in the absence of*, rather than in lieu of, any method of review provided in the Medicare Act.[3] *Id.*

**3.** Neither party in *Michigan Academy* argued that § 1331 jurisdiction would be proper where the

Medicare Act already provided means for review of a decision:

This line of cases, therefore, leads to the same conclusion here as in *Salfi* and *Ringer*. The sole means of review of the PRRB's decision is pursuant to § 1395*oo* (f). This Court has no jurisdiction of this action under 28 U.S.C. §§ 1331 or 1361.

SVHC also points to *Memorial Hospital v. Sullivan*, 779 F.Supp. 1410 (D.D.C.1991) (*"Memorial Hospital II"*). There, the district court, having found that the PRRB did not have jurisdiction of the decision of a fiscal intermediary not to reopen the plaintiff's NPR, *see Memorial Hospital v. Sullivan*, 779 F.Supp. 1406, 1408–09 (D.D.C.1991) (*"Memorial Hospital I"*), held that it could review the intermediary's decision and direct the intermediary to reopen the plaintiff's cost reports. 779 F.Supp. at 1412–13. However, the factual situation confronting the district court was singular:

> It is critical to note that, in using the reopening procedure and in not appealing to the PRRB those costs which were self-disallowed, the Plaintiff followed the route prescribed by the Secretary. Defendants cannot plausibly argue that Plaintiff should be penalized for not preserving an appeal at the PRRB, when the Secretary directed those in Plaintiff's position *not* to appeal to the PRRB, but instead to file for reopening of the cost reports to include self-disallowed data.

*Id.* at 1412. The decision in *Memorial Hospital II* is "a very narrow one on very specific facts." *Albert Einstein Medical Center v. Sullivan*, 830 F.Supp. 846, 852 (E.D.Pa.1992), *aff'd*, 6 F.3d 778 (3d Cir.1993) (table). Those facts are not replicated here. The Secretary did not direct SVHC to pursue reopening in lieu of a direct appeal to the PRRB. No injustice arises here from confining SVHC to the statutorily prescribed appeal process. *See id.*

 This Court's jurisdiction over this action, then, arises solely under § 1395*oo*(f). Moreover, under that section, this Court's review does not extend to the merits of Blue

Cross's denial of the reopening applications. *Cf. Abington Memorial Hospital v. Heckler*, 750 F.2d 242, 244 (3d Cir.1984) (no authority under § 1395*oo*(f) to remand to Secretary, rather than PRRB), *cert. denied*, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985). Review under § 1395*oo*(f)(1) is of the PRRB's "final decision." The PRRB's only decision in this case—and therefore the sole issue for review here—was that it lacked jurisdiction to review Blue Cross's decision.

SVHC argues that this Court's unwillingness at this time to review the merits of the underlying decision not to reopen will deny any right to meaningful review. This is not correct. This Court grants Defendants' motion because the refusal of the PRRB to review Blue Cross's decision was proper under the Medicare Act. SVHC has not lost any rights or privileges to which it was entitled.

**B. *Does the Amended Complaint State a Cause of Action on which Relief may be Granted?***

Judicial review under § 1395*oo*(f) is pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 et seq. Under the APA, SVHC must demonstrate that the PRRB's action was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *Id.* at § 706(2)(A). SVHC alleges that the PRRB's determination was contrary to law.

 The standard of review to be applied here is one of deference to the Secretary. First, this Court must determine "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If the statute does not address the question directly or is ambiguous, this Court will consider whether the Secretary's construction is permissible. *Good Samaritan Hospital v. Shalala*, 508 U.S. 402, 413–15, 113 S.Ct. 2151, 2159, 124

---

Respondents counter that the dispositions in [*Salfi* and *Ringer*] are consistent with the view that Congress' purpose was to make clear that whatever specific procedures it provided for judicial review of final action by the Secretary

were exclusive, and could not be circumvented by resort to the general jurisdiction of the federal courts.

476 U.S. at 679, 106 S.Ct. at 2140.

L.Ed.2d 368 (1993); *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781–82.

1. Does the PRRB have explicit jurisdiction under § 1395oo(a) to review the decision of Blue Cross?

SVHC alleges that subsections (A)(i), (A)(ii), and (C) of 42 U.S.C. § 1395oo(a)(1) require the PRRB to review Blue Cross's decision. Courts that have considered this issue have come to differing conclusions. *Compare Good Samaritan Hospital Regional Medical Center v. Shalala,* 894 F.Supp. 683 (S.D.N.Y.1995) (Conner, J.) (*"Good Samaritan"*) (no explicit grant of jurisdiction); *Binghamton General Hospital v. Shalala,* 856 F.Supp. 786 (S.D.N.Y.1994) (Sand, J.) (same); and *Memorial Hospital I, supra with State of Oregon o/b/o Oregon Health Sciences University. v. Bowen,* 854 F.2d 346 (9th Cir.1988) (explicit grant of jurisdiction).

For several reasons, the better reading of the Medicare Act is that it does not explicitly address whether the PRRB has jurisdiction to review an intermediary's decision not to reopen an NPR. First, the decision not to reopen is not explicitly encompassed by the category of decisions reviewable by the PRRB under § 1395oo(a). The statute authorizes PRRB review of a "final determination ... as to the amount of total program reimbursement" within the meaning of (1)(A)(i) or a "final determination ... as to the amount of payment" within the meaning of (1)(A)(ii).[4] *See Good Samaritan,* 894 F.Supp. at 689. "While we agree with plaintiff[ ] that a decision not to reopen is in some sense 'final,' it does not, in and of itself, establish an 'amount of total program reimbursement.'" *Id.* at 690. To the contrary, it indicates an unwillingness to disturb a previously calculated reimbursement amount.

Second, it is difficult to accept that Congress explicitly authorized PRRB review of denials of reopening when Congress did not explicitly authorize reopening. The Medi-care Act makes no reference to reopening. *HCA Health Services of Oklahoma, Inc. v. Shalala,* 27 F.3d 614, 617–18 (D.C.Cir.1994); *Binghamton Hospital,* 856 F.Supp. at 793; *Albert Einstein,* 830 F.Supp. at 851. The sole authority for reopening is found in the Secretary's regulations. *See* 42 C.F.R. §§ 405.1885–.1889. The leap in reasoning that SVHC urges here is too great to be made under the first part of a *Chevron* analysis.

Finally, SVHC's reading of the statute is inconsistent with Congress's clear interest in finality. The statute requires that the suitable final decision of an intermediary must be appealed to the PRRB within 180 days of issuance, if at all. SVHC's reading, on the other hand, would allow a provider to prolong this period indefinitely through the filing of repeated applications for reopening, so long as the first application is filed within three year of issuance of the NPR.[5] This policy and this result cannot be reconciled. *Binghamton Hospital,* 856 F.Supp. at 795 (citing *Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977)); *see also Good Samaritan,* 894 F.Supp. at 690–91; *Albert Einstein,* 830 F.Supp. at 851.

SVHC understandably relies on *Oregon* in support of its argument that the statute specifically confers the necessary jurisdiction on the PRRB. There, the Ninth Circuit identified four reasons why it believed that the statute required the PRRB to review the intermediary's decision. *See* 854 F.2d at 349. First, it held that the intermediary's decision was "a final determination, a fact the Secretary concedes in his briefs." *Id.* Second, the court concluded that the decision implicated the amount of reimbursement. Third, the court noted that the statutory section that, it believed, authorized the reopening process, 42 U.S.C. § 1395x(v)(1)(A)(ii), did not indicate that a denial of reopening would be unreviewable. Finally, the court looked

---

4. Subsection (C) looks to "such final determination," a clear reference to subsections (A)(i) and (A)(ii).

5. This case offers a good illustration of how such a prolongation might occur. SVHC did not appeal the NPRs or apply for an adjustment within 180 days of Blue Cross's issuance of the NPRs. Its later application for an adjustment was denied by HCFA as untimely. It then applied for a reopening "for the specific purpose of submitting TEFRA Adjustment Applications for these cost years." Amended Complaint at ¶ 45.

to the language of the Secretary's regulations concerning the reopening process. *Id.*

However, the cases finding no explicit PRRB jurisdiction under these circumstances are more persuasive. As noted *supra*, although the intermediary's decision is final as to the reopening application and implicates the final amount of reimbursement, it does not determine that amount. Moreover, the statutory section to which the Ninth Circuit pointed does not authorize reopening. *HCA Health Services*, 27 F.3d at 618 (citing *Good Samaritan Hosp.*, 508 U.S. at 407–09, 113 S.Ct. at 2156). Finally, the language of the Secretary's regulations, which will be discussed more fully *infra*, is not particularly probative of whether the statute speaks expressly to the issue.

Plaintiff also seeks to rely on *Edgewater Hospital, Inc. v. Bowen*, 857 F.2d 1123 (7th Cir.1988), *as modified*, 866 · F.2d 228 (7th Cir.1988). This reliance is misplaced. In *Edgewater Hospital*, the plaintiff applied to its intermediary for a reopening with regard to four cost items. The intermediary found in favor of the plaintiff and revised the NPR with regard to one of the four items claimed but rejected the other three. The plaintiff then appealed to the PRRB. This appeal was made within 180 days of issuance of the second, revised NPR but more than 180 days after the date of the original report. *Id.* at 1125. The PRRB declined to review the intermediary's decision. It asserted that, because reimbursement for the matters challenged had been established in the original NPR and not changed in the revised report, the Plaintiff's appeal did not comport with the 180–day limitations period of § 1395*oo*(a)(3). *Id.* at 1134. The court rejected this construction:

> [T]he reopening was a reconsideration of all cost items challenged by the provider. The intermediary determined that it would change one item, but it also decided to leave intact the disallowance of the other costs. We hold that the second NPR ... was a "final determination" under section 1395*oo*(a) of the Act on all four "matters in issue" as that term is used in section 405.1885 of the Regulations.

*Id.* at 1137. This action, however, involves a situation in which the application to reopen was denied in its entirety. There has been no change in SVHC's reimbursement as a result of its application. *Edgewater Hospital* is consistent with the reading of § 1395*oo*(a)(1) by the *Good Samaritan* and *Binghamton Hospital* courts and to which this Court adheres.

SVHC also submits that § 1395ww(b)(4) mandates PRRB review of the intermediary's decision not to reopen. Again, this Court disagrees. Section 1395ww(b)(4) directs the Secretary to develop procedures for adjustments. It does not direct the Secretary to grant reopening. This action addresses the PRRB's refusal to exercise jurisdiction over the denial by Blue Cross of SVHC's motion *to reopen*. Moreover, SVHC does not challenge HCFA's conclusion that SVHC's application for adjustment was untimely under 42 C.F.R. § 413.40(e). There is no reason to believe that appeal of HCFA's decision would have been futile.

The Medicare Act does not directly address whether the PRRB has jurisdiction to review an intermediary's refusal to reopen an NPR. Therefore, this Court proceeds to the second step of the *Chevron* analysis.

2. Is the Secretary's interpretation of the Medicare Act to preclude PRRB review of Blue Cross's decision permissible?

The Secretary's regulations concerning reopening of NPRs are found at 42 C.F.R. §§ 405.1885–.1889. As construed by the Secretary, they preclude PRRB jurisdiction over an intermediary's decision not to reopen. Because there is no explicit legislative authorization for reopening, these regulations are reviewed only to determine whether they are a reasonable interpretation of the statute. *See Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–83. There is no occasion to consider whether SVHC's proffered interpretation is reasonable, or even more desirable. Similarly, this Court will defer to the Secretary's construction of her regulations " 'unless it is plainly erroneous or inconsistent with the regulation.' " *Butler County Memorial Hospital v. Heckler*, 780 F.2d 352,

355 (3d Cir.1985) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

SVHC's challenge here is more to the manner in which the Secretary has construed the regulations than to the regulations themselves. Defendants submit that the Secretary's policy is grounded in § 405.1885(c), which directs, "Jurisdiction for reopening a determination or decision rests exclusively with that administrative body that rendered the last determination or decision." They note that, where the last determination was made by the intermediary, this section does not authorize an appeal to the PRRB. The only section of the regulations that speaks to appeals of reopening decisions is § 405.1889:

> Where a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened as provided in § 405.1885, such revision shall be considered a separate and distinct determination or decision to which the provisions of §§ 405.1811 [hearing by intermediary], 405.1835 [hearing by PRRB], 405.1875 [review by Secretary] and 405.1877 [judicial review] are applicable.

This section does not speak to review of denials of reopening. Therefore, Defendants argue, this construction is reasonable.

Nothing in Defendants' argument is inherently unreasonable. Indeed, this construction has been accepted by a clear majority of courts to consider it. *See HCA*, 27 F.3d at 619; *Good Samaritan*, 894 F.Supp. at 693; *Binghampton*, 856 F.Supp. at 799.

As support for its argument, SVHC again looks to the preference for judicial review identified in *Michigan Academy, supra.* However, this Court is persuaded by the reasoning of Judge Sand that this preference does not dictate PRRB jurisdiction here:

> First, reopenings of administrative proceedings are disfavored due to a strong public policy in bringing litigation to an end. *INS v. Abudu*, 485 U.S. 94, 108 S.Ct.

904, 99 L.Ed.2d 90 (1988). Second, as discussed above, Congress has sharply limited judicial review of action arising under the Medicare statute, restricting it to the extent expressly provided by the statute. *Binghamton*, 856 F.Supp. at 798. The Medicare Act, as enacted and construed by the Secretary, already provides for review of administrative determinations of Part A reimbursement. Where, as here and in contrast to the situation presented in *Michigan Academy, see* 476 U.S. at 668–69, 106 S.Ct. at 2134–35, Congress has defined the parameters of that review, this Court is reticent to expand those parameters.

SVHC also urges that the recognition of "exclusive jurisdiction" in § 405.1885(c) is little more than a ministerial designation of the point at which applications for reopening are to be submitted. This view was adopted by the Ninth Circuit in *Oregon. See* 854 F.2d at 349. However, it fails to account for the seemingly restrictive language of § 405.1889. *Binghamton*, 856 F.Supp. at 798. While colorable, this construction does not convince this Court that the construction advanced by the PRRB is unreasonable.

SVHC also argues that the unreasonableness of the Secretary's construction is demonstrated by § 405.1885(b) of the regulations, which provides that an intermediary "shall" reopen its decision within three years of issuance if directed to do so by HCFA. SVHC argues that, absent PRRB review of an intermediary's decision not to reopen, this provision is unfair because providers have no similar mechanism to compel reopening. It is difficult to discern this alleged unfairness or how it would be remedied by PRRB review of all intermediary decisions on reopening. Moreover, any provider whose reimbursement is affected by a HCFA-directed reopening may appeal to the PRRB and, in turn, a district court pursuant to § 405.1889.

SVHC also alleges that its need to reopen arose as a result of fraud or similar fault by Blue Cross.[6] Reopening is mandatory where

---

**6.** A quick scan of SVHC's 34-page reopening application submitted to Blue Cross, Ex. F to Amended Complaint, does not reveal any allegations of fraud or any suggestion that reopening is mandatory, rather than discretionary. However, the issue before this Court is jurisdiction, rather than preservation of arguments, and this observation forms no part of the rationale for this Court's decision.

these circumstances are established. *Id.* at § 405.1885(d). There is some chance that, as here, the entity accused of fraud will be designated to review that accusation and the review will not be subject to appeal. This outcome is not unreasonable in a manner that would defeat the regulatory scheme. *Binghamton,* 856 F.Supp. at 797 & n. 8.

SVHC's remaining arguments are also unavailing. The Secretary's regulations concerning reopening and the PRRB's construction of those regulations are permissible.

## IV. CONCLUSION

An appropriate order will follow.

### ORDER

AND NOW, this 22nd day of December, 1995 for the reasons stated in the accompanying Memorandum, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [Doc. 33] is GRANTED and that this action is dismissed. The Clerk is directed to mark this file closed.