**ADVANCED MEDICAL TECHNOLOGIES, INC.,**

**and**

**Jem Tech Health Services, Plaintiffs,**

**v.**

**Donna SHALALA, Secretary, et al., Defendants.**

**HEALTH SYSTEM CARE, INC., Plaintiff,**

**v.**

**Donna SHALALA, Secretary, et al., Defendants.**

**Civil Action Nos. 96–5473, 5474(JBS).**

United States District Court, D. New Jersey.

July 11, 1997.

Steven H. Berkowitz, Southampton, PA, Fredric R. Cohen, Katz, Ettin, Levine, Kurzweil & Weber, Cherry Hill, NJ, for Plaintiffs.

Faith S. Hochberg, United States Attorney by Louis J. Bizzarri, Assistant United States Attorney, Mitchell H. Cohen, Camden, NJ, for Defendants.

## *OPINION*

SIMANDLE, District Judge.

### I. *Background*

Plaintiffs in these two related cases have petitioned for a preliminary injunction against defendants, the parties responsible for the administration of the Medicare laws. Plaintiffs claim that defendants have engaged in improper practices, resulting in the denial of payment to plaintiffs for the provision of medical supplies to Medicare beneficiaries.

The plaintiffs in these two related cases are Advanced Medical Technology, Inc. and Jem Tech Health Services, Inc. (in Civil Action 96–5473), and Health System Care, Inc. (in Civil Action 96–5474) (collectively referred to as "plaintiffs"). These are independent medical supply companies which provide medical supplies to beneficiaries under the Medicare Act (Title XVIII of the Social Security Act, as amended, 42 U.S.C. § 1395, et seq.) upon the instructions of physicians. As suppliers of durable medical equipment ("DME"), plaintiffs may apply for reimbursement from the Medicare Program, administered by the Health Care Finance Administration ("HCFA"). The HCFA, in turn, has

contracted with entities such as defendants Blue Shield of South Carolina and its subsidiary, Palmetto Government Benefits Administrators ("Blue Cross" and "Palmetto") to process and decide the claims of the suppliers and beneficiaries. Such regional carriers, referred to as Durable Medical Equipment Regional Carriers ("DMERCs"), are congressionally authorized by 42 U.S.C. § 1395u (generally) and § 1395m(a)(12) (with respect to durable medical equipment).

Plaintiffs are suppliers of urological supplies and surgical dressings. Medicare Part B pays for urological supplies as part of the benefit for "prosthetics." 42 U.S.C. §§ 1395k(a)(2)(I), 1395l(a)(1), 1395m(h), & 1395x(s)(8). Medicare pays for such supplies if a beneficiary has permanent urinary incontinence, and must use a catheter or external collection device. 42 C.F.R. § 410.36(a)(2); Medicare Carrier's Manual ("MCM") § 2130, *reprinted* in CCH Medicare and Medicaid Guide, ¶ 3152. The benefit does not include such supplies as adult diapers or rubber sheets. MCM § 2130. Similarly, Medicare Part B pays for surgical dressings in specific circumstances, spelled out in the statute and regulations, 42 U.S.C. §§ 1395l(a)(1), 1395m(i), 1395x(s)(5); 42 C.F.R. §§ 410.10(g), 410.36(a)(1), and in any event such dressings are "limited to primary and secondary dressings required for the treatment of a wound caused by, or treated by, a surgical procedure," MCM § 2079, *reprinted in* CCH Medicare and Medical Guide, ¶ 3140.

Plaintiffs allege that their claims for payment for devices they have supplied have been wrongfully denied, delayed or mismanaged by defendants, and that defendants are wrongfully seeking to recoup certain funds previously paid to plaintiffs upon claims. Plaintiffs allege that the defendants are applying secret policies and are acting on a random and arbitrary manner which makes it impossible for plaintiffs to remain in business. Plaintiffs challenge certain documentation requirements imposed to verify medical necessity and to assure that the devices have been received and used by the beneficiary.

Plaintiffs seek an order from the court requiring the Secretary of Health and Human Services to properly administer the Medicare program for durable medical equipment; to eliminate alleged systemwide bias against DME suppliers; to institute prompt, fair review of claims; and to provide meaningful information and records to support rejections of claims. Plaintiffs' complaints contain assertions of jurisdiction under 28 U.S.C. §§ 1331 and 1361.

In response to plaintiffs' application for preliminary injunction, defendants raised the issue of whether this court has jurisdiction to hear plaintiffs' claims, arguing that plaintiffs have failed to exhaust their administrative remedies, and asserting that plaintiffs' claims have not been pursued to a final decision for purposes of judicial review. After conducting a telephone conference with counsel for the parties, this court determined that a hearing on the threshold issues of jurisdiction and exhaustion would be appropriate. The parties submitted supplemental information as to these issues and oral argument was held on February 13, 1997.[1]

## II. *Discussion*

### A. *Jurisdiction under 28 U.S.C. § 1331— Exhaustion of Administrative Remedies*

Defendants argue that this court does not have jurisdiction to entertain plaintiffs' application for a preliminary injunction under 28 U.S.C. § 1331 because plaintiffs have failed to exhaust their administrative remedies. Judicial review of final decisions of the Secretary denying Medicare claims is available upon exhaustion of remedies under 42 U.S.C. § 1395u(b)(3)(C) and 42 C.F.R. §§ 405.801— 405.872 (1996).

The limited authority granted by Congress to the federal courts to review Medicare reimbursement decisions is stated in 42

---

1. Plaintiffs' complaints were accompanied by the Affidavit of David Jemini (President of Advanced, Jem Tech and Health System Care) and exhibits attached to the complaints. Plaintiffs' supplemental papers include the Affidavit of Steven H. Berkowitz, Esquire, and exhibits attached thereto. Defendants have submitted a Declaration of Robert Brown, three Declarations of Robin Spires, and various marked exhibits.

U.S.C. § 1395ff(b)(1), which states in relevant part:

> Any individual dissatisfied with any determination under subsection (a) [pertaining to entitlement to and amount of Medicare benefits] of this section as to . . .
>
>> (C) the amount of benefits under part A or part B of this subchapter (including a determination where the amount is determined to be zero) . . .
>
> shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of [Title 42] and to judicial review of the Secretary's final decision after such hearing as is provided in Section 405(g) of [Title 42] . . . [2]

■ The availability of judicial review under § 405(g), requiring a "final decision of the Secretary made after a hearing," is the exclusive means of judicial review of Medicare Act decisions, *Heckler v. Ringer*, 466 U.S. 602, 614–15, 104 S.Ct. 2013, 2021–22, 80 L.Ed.2d 622 (1984), pursuant to § 405(h),[3] which is incorporated into the Medicare Act by 42 U.S.C. § 1395ii.

Title 42, United States Code, Section 405(g), as amended, currently states as follows:

(g) Judicial review

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered,

---

**2.** Congress further provided that no hearing is available if less than $500 is in dispute, and judicial review is unavailable unless the "aggregate amount in controversy is less than $1,000," 42 U.S.C. § 1395ff(b)(2)(B). We assume all claims herein exceed these thresholds.

**3.** 42 U.S.C. § 405(h) states:

No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under [the Medicare Act].

modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.

Plaintiffs concede that they have not exhausted their administrative remedies, but nonetheless assert that jurisdiction is proper pursuant to 42 U.S.C. § 405(g). Plaintiffs argue that a plaintiff need not exhaust its administrative remedies where (1) plaintiff has presented its claim for benefits to the Secretary of the agency in question, (2) the issue presented to the court is collateral to plaintiff's own claim for benefits, and (3) plaintiff can show that exhaustion of its administrative remedies would be futile since the issue before the court is the challenge to a federal agency's systemwide unrevealed policy which is inconsistent in critically important ways with established regulations. *See Bowen v. New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986).

Plaintiffs claim to have satisfied these requirements as follows:

(1) Plaintiffs presented their claims to the Secretary's delegate, the insurance carrier Palmetto;

(2) Plaintiffs are challenging several aspects of an agency's policy which may or may not affect their own factspecific claims for benefits;

(3) Exhaustion would be futile since the inconsistent, unpublished policies of which plaintiffs complain are enforced systemwide, thus infringing on plaintiffs' and others' due process rights.

Plaintiffs also complain that they face irreparable harm because of the length and complexity of the administrative review process, which could take up to five years. They argue that if required to exhaust their administrative remedies, plaintiffs will be forced into bankruptcy.

Defendants claim that the Social Security Act sets forth the exclusive procedure by which plaintiffs can obtain administrative and judicial review of their claims for Medicare reimbursement. They cite two Supreme Court decisions for the proposition that a party is prohibited from seeking judicial review of any claim arising under the Medicare statute except under the established review procedures. *Heckler v. Ringer*, 466 U.S. 602, 615, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 760–61, 95 S.Ct. 2457, 2464, 45 L.Ed.2d 522 (1975).

The principal jurisdictional issue is whether plaintiffs' claims herein are claims "arising under" the Medicare Act, thus requiring exhaustion of remedies under 42 U.S.C. §§ 405(g) & (h) as a prerequisite to judicial review.

■ The three prerequisites to obtaining court review of a Medicare claim are (1) a non-waivable requirement that the claimant file a claim with the appropriate authority; (2) exhaustion of administrative remedies provided by statute; and (3) judicial review of a final decision of the Secretary within the time frame set forth in the Act. This procedure is not a mere codification of the judicial doctrine of exhaustion, but rather a statutorily specified jurisdictional prerequisite to claims arising under the Social Security Act. *Salfi*, 422 U.S. at 766, 95 S.Ct. at 2467.

The administrative appeals process for Medicare claims under Part B, such as the claims for payment for DME, or for recoupment and set-off of past claims paid, which are at stake in this case, is governed by 42 C.F.R. §§ 405.801—.872 and 20 C.F.R. §§ 404.429—.961. This is a five-step process summarized as follows. First, the claim must be presented to the carrier, here Palmetto, which makes an initial determination

within 60 days. 42 C.F.R. § 405.803. Second, a party wishing to appeal from the initial determination must request review within six months, 42 C.F.R. § 405.807, including an opportunity to present further written evidence, 42 C.F.R. § 405.809. Third, an appeal from the review determination is perfected by a request for a "fair hearing" before a carrier appointed hearing officer. 42 C.F.R. § 405.815, 817. Fourth, any appeal from the "fair hearing" is to the administrative law judge, 20 C.F.R. § 404.429, and a hearing is conducted upon the record. Fifth, review of the ALJ's decision is in the Departmental Appeals Board; a decision of the Board triggers the 60–day period for seeking judicial review in the federal district court, pursuant to 42 U.S.C. § 405(g), *supra*.

Despite failing to comply with this framework, plaintiffs urge this court to assert jurisdiction, arguing that they are excused from exhausting administrative remedies because their claim is in essence a challenge to defendants' unconstitutional and statutorily unlawful practices, not merely a claim for benefits or reimbursement. They rely primarily on *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), in which the Supreme Court held that a class of claimants could proceed in federal court without exhausting their administrative remedies. The *Bowen* class alleged an unrevealed policy of systemwide bias resulting in denials of disability payments to certain beneficiaries. Here, plaintiffs argue that unrevealed documentation requirements and presumptions of fraud directed at DME providers create a similar systemwide bias.

■ However, plaintiffs have not come forth with evidence that persuades this court that such a situation exists in this case to justify excusing the exhaustion requirement. Defendants have responded to plaintiffs' allegations of an unrevealed policy by pointing to requirements published in the Medicare statutes and regulations, Health Care Financing Administration manuals, and the DMERC Region C Supplier's Manual. (2/7/97 Spires Decl. ¶¶ 2–6, 11–14; 2/6/97 Spires Decl. ¶¶ 3, 9 & Att. C; 1/7/97 Spires Decl. ¶¶ 6, 27–48; HSC Exs. 1–3, Advanced Ex. 1). If plaintiffs are aggrieved by a policy of requiring substantiation of their claims which they believe is not in conformity with the prescribed regulations, section 405(g) requires that they obtain a final decision, and that judicial review will be available for "the question of conformity with such regulations and the validity of such regulations." 42 U.S.C. § 405(g), *supra*. Thus, to the extent plaintiffs assert that Palmetto and Blue Cross are requiring greater documentation than is permitted by the governing Medicare regulations, plaintiffs have the opportunity to preserve such claims for judicial review by pursuing their administrative appeals to a final decision. It is rather remarkable that plaintiffs have not pursued these readily available remedies which are prerequisites to judicial review.

■ The court is also not persuaded by plaintiffs' argument that they have been unable to receive adequate administrative review of their claims because the Secretary is biased against plaintiffs as DME providers. The grant of jurisdiction to this court under 42 U.S.C. § 405(g) does not include the power to find facts involving administrative bias, *Grant v. Shalala*, 989 F.2d 1332 (3d Cir. 1993). Presumably such error would be detectable upon judicial review of a final decision if it results in decisions unsupported by substantial evidence upon the record as a whole.

Plaintiffs contend that they have been hindered during the process, for example, because they did not receive rejection notices for some of their denials, they were not given access to the records reviewed by fair hearing officers, and the fair hearing reviews were based on incomplete information. It would offend precisely the purposes for requiring exhaustion of the administrative procedures—to enable administrators to correct any errors, and to amass a complete record for judicial review after final denial of a claim—if this court were to exercise jurisdiction over a non-final administrative decision and decide facts of this nature in the first instance.

■ Although it appears that plaintiffs may have attempted to pursue some of their claims at various levels of the appellate process, many claims were never appealed, and

*plaintiffs have failed to obtain a final decision from the Secretary for any of their claims.* Contrary to plaintiffs' contentions, defendants have demonstrated that plaintiffs' attempts at appeal have not been futile. According to the Declaration of Robin Spires, the Director of Professional Relations of Palmetto, plaintiffs failed to seek review of 78.6 percent of their denied claims. (2/7/96 Spires Decl. at ¶¶ 9–10; 2/6/97 Spires Decl. at ¶ 8). Of those that were appealed at the first level of administrative review, however, approximately 10 percent of plaintiff Jem Tech's denials and approximately 30 percent of plaintiff Health System Care's denials were reversed. (2/7/97 Spires Decl. at ¶ 10; 2/6/97 Spires Decl. at ¶ 8d). Plaintiff Advanced Medical filed no requests for review. (2/7/97 Spires Decl. at ¶ 9).[4] No court will recognize a claimant's assertion of futility when the claimant largely abandons unsuccessful claims and has in fact found an ongoing degree of success in pursuing the available means of administrative relief. A plaintiff does not confer jurisdiction upon this court under 28 U.S.C. § 1331 when it abandons the administrative process; such jurisdiction is precluded by 42 U.S.C. §§ 405(g) & (h).

Based on the information presented by the parties, the court cannot conclude that plaintiffs are entitled to proceed in federal court without first exhausting their administrative remedies. Therefore, this court has no jurisdiction to hear plaintiffs' application for a preliminary injunction. This court lacks subject matter jurisdiction under 28 U.S.C. § 1331 at the present time; where claims remain in the administrative process, relief under 42 U.S.C. § 405(g) is premature until a final adverse decision is received, and where claims have been abandoned by foregoing available administrative appeals, those claims are foreclosed from judicial review.

### B. *Mandamus Jurisdiction*

 Plaintiffs have argued in the alternative that this court has mandamus jurisdiction over its claim. Under 28 U.S.C. § 1361, federal district courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus relief is available only where the plaintiff shows "that an officer of the Government owes him a legal duty which is a specific, plain ministerial act 'devoid of the exercise of judgment or discretion.' An act is ministerial only when

---

4. That a claimant may not believe it will ultimately prevail upon a claim before an administrative agency does not render its efforts "futile." In the present case, for example, defendants have asserted the facts they believe have been developed in the ongoing administrative processes and investigations which render many of plaintiffs' claim for payment questionable or even fraudulent, and which therefore require factual development through the administrative fact-finding process. On October 29, 1996, Palmetto advised plaintiff Health System Care ("HSC") that it had suspended payment for Medicare claims submitted by HSC based on evidence of fraud or wilful misrepresentation, (D.Ex. 10), citing evidence of falsified or altered documents and manipulation of Medicare claims. (*Id.*). According to the Spires Declaration of Jan. 7, 1997 at ¶ 23, Palmetto has begun a manual review of HSC's claims, and has detailed the reasons why many of the claims, in Palmetto's view, do not meet the Medicare requirements published in the DMERC Manual, *id.* at ¶¶ 33–36, 46, for example, failure to show that the supplies were medically necessary, or documentation which demonstrated that approved supplies had been improperly "bundled" with unapproved supplies, or claims which resulted in double billing as both a bundled sup-

ply and an unbundled one. *Id.* ¶ 33a-c, d. Similarly, Palmetto investigated claims for incontinence supplies from plaintiff Advanced Medical, contacting 20 beneficiaries to gather information (*see* Brown Decl. ¶ 10), and finding that of the 20 beneficiaries, 11 had no catheters and 8 had actually received diapers instead of the items billed. (*Id.*) Likewise, the 30 beneficiaries served by plaintiff Jem Tech were contacted by Palmetto by telephone, and according to Robert Brown these beneficiaries "confirmed that almost all of the supplies had not been delivered or were not medically necessary." *Id.* Since the Secretary takes the position that incontinence supplies are covered by Medicare only if the beneficiary has a prosthetic device such as an indwelling catheter, the absence of any such catheter or prosthetic device is a basis for denying payment for the supplies. *Id.* ¶ 11. Palmetto's decisions upon such matters, whether denials of payment or determinations of past overpayment, are subject to administrative appeal before the "fair hearing officer" and, if appealed further, before an ALJ, as discussed in text above. Such appeals are indeed in process as to various claims denials and overpayment determinations, see *id.* ¶¶ 12–15, and none has reached the final decision stage.

its performance is positively commanded and so plainly prescribed as to be free from doubt." *Richardson v. United States,* 465 F.2d 844, 849 (3d Cir.1972) (en banc) (citations omitted), *rev'd on other grounds,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Harmon Cove Condominium Ass'n v. Marsh,* 815 F.2d 949, 951 (3d Cir.1987); *Naporano Metal & Iron Co. v. Secretary of Labor,* 529 F.2d 537, 542 (3d Cir.1976).

█ Nor can it be said that the Secretary's administrative process permits unreasonable delays in decisionmaking which would warrant the exercise of the court's mandamus jurisdiction. Where administrative delay in decisionmaking becomes egregious due to the agency's neglect, such an extraordinary situation can be addressed by the writ of mandamus. *See, e.g., Telecommunications Research & Action Ctr. v. FCC,* 750 F.2d 70 (D.C.Cir.1984); *In re City of Virginia Beach,* 42 F.3d 881, 885 (4th Cir. 1994). In the present case, the statutory and regulatory scheme assures that claims submitted by the suppliers such as plaintiffs will be decided promptly, or the claim will be deemed denied so that the supplier may advance to the next stage of administrative review—and ultimately judicial review. The applicable regulations provide for decisions of claims and hearings in compliance with the statutory requirement of acting "with reasonable promptness," under § 1842(b)(3)(C) of the Act, 42 U.S.C. § 1395u(b)(3)(C).[5] Vari-

ous regulations limit the decisionmaking time period at the earlier stages to a period of 60 days following receipt of the claim and necessary information. *See, e.g.,* 42 C.F.R. §§ 405.801,[6] 405.803, 405.806, 405.821. The request for a hearing is triggered if the carrier does not process the claim within 60 days of a completed claim.[7] The carrier hearing officer then convenes a hearing which, if decided adversely, leads to a hearing before an ALJ and a final decision which, if adverse to the plaintiff, gives rise to judicial review, as discussed above. Because the administrative process places reasonable time limits upon such claims processing, this case does not fall within the exception for unreasonable delays in decisionmaking. See, *e.g., Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 587, 109 S.Ct. 1361, 1376, 103 L.Ed.2d 602 (1989).

█ Moreover, the writ of mandamus is available to a plaintiff "only if he has exhausted all other avenues of relief." *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984). This exhaustion requirement is also found in the Social Security Act itself, as interpreted by the courts. Specifically, courts have ruled that 42 U.S.C. § 405(h) requires that a Medicare-related decision of the Secretary of Health and Human Services ("Secretary") may be judicially reviewed only via the method set forth in 42 U.S.C. § 405(g). *See, e.g., Saint Vincent*

5. § 1842(b)(3)(C) of the Act, 42 U.S.C. § 1395u(b)(3)(C), provides in relevant part that where a carrier such as Palmetto has primary claims processing responsibility on behalf of the Secretary, the contract with the carrier requires that the carrier:
 will establish and maintain procedures to which an individual enrolled under this part will be granted an opportunity for a fair hearing by the carrier, in any case in which the amount in controversy is at least $100 but less than $500, when requests for payment under this part with respect to services furnished him are denied or are not acted upon with reasonable promptness.

6. For example, "reasonable promptness" under 42 C.F.R. § 304.801(b) is defined as:
 a period of 60 consecutive days after the receipt by the carrier of a request for payment.

7. The Medicare Carriers Manual at § 12015.I, states as follows:

If you do not process a claim within 60 calendar days from the day you received it, the claimant has the right to a hearing. The amount in controversy test is not applicable. The claimant or his representative completes and submits the hearing request.

Upon receipt of the hearing request, the HO (hearing officer) determines whether the request for payment was filed more than 60 days earlier and whether you have taken action prior to the request. If you have not, the HO directs you to notify the claimant of the reason for the delay, and to begin processing the claim within 10 days. Upon receiving a copy of your notice sent to the claimant, the HO dismisses the hearing because the action is being taken on the initial payment request. If you do not comply with the HO's request, the HO prepares for a hearing and sends the party to a notice of the time and place of hearing, with a copy to you.

*Health Ctr. v. Shalala,* 937 F.Supp. 496, 502 (W.D.Pa.1995), *aff'd,* 96 F.3d 1434 (3d Cir. 1996) (Table). That latter statute permits judicial review only after a final decision by the Secretary. The Third Circuit has repeatedly emphasized that writs of mandamus may be granted only in extraordinary situations. *Grant v. Shalala,* 989 F.2d 1332, 1342 (3d Cir.1993); *In re School Asbestos Litigation,* 921 F.2d 1310 (3d Cir.1990), cert. denied sub nom. *U.S. Gypsum Co. v. Barnwell School Dist. No. 45,* 499 U.S. 976, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991).

 Since plaintiffs have not demonstrated that the Secretary has violated a plain ministerial duty owed to them, there is no basis for mandamus jurisdiction. The great weight of authority provides that a plaintiff may not escape the exhaustion requirement in cases arising under the Social Security Act simply by bringing its cause of action by way of mandamus. *See Heckler v. Ringer,* 466 U.S. 602, 616–17, 104 S.Ct. 2013, 2022–23, 80 L.Ed.2d 622 (1984); *Saint Vincent Health Ctr. v. Shalala,* 937 F.Supp. 496, 502 (W.D.Pa.1995), *aff'd,* 96 F.3d 1434 (3d Cir. 1996) (Table); *Association of American Medical Colleges v. Califano,* 569 F.2d 101, 111–13 (D.C.Cir.1977).

### III. *Conclusion*

As plaintiffs have failed to exhaust their administrative remedies, and have not demonstrated that they should be excused from doing so, this court is without jurisdiction to hear its application for a preliminary injunction. The court is also without mandamus jurisdiction because plaintiffs have not exhausted all other avenues of relief. Plaintiffs' application for a preliminary injunction will therefore be denied without prejudice for lack of jurisdiction.

Because this court lacks subject matter jurisdiction, the plaintiffs' complaints will be dismissed.

The accompanying Order is entered.

### *ORDER*

This matter having come before the court on plaintiffs' application for a preliminary injunction; and the court having requested supplemental briefing by the parties on the issue of whether this court lacks jurisdiction because plaintiffs have failed to exhaust their administrative remedies; and the court having reviewed the submissions of the parties; and the court finding that it lacks subject matter jurisdiction because plaintiffs have failed to exhaust their administrative remedies required by 42 U.S.C. §§ 405(g) & (h) and have failed to establish mandamus jurisdiction pursuant to 28 U.S.C. § 1361 for the reasons expressed in the Opinion of today's date;

It is this 11th day of July, 1997, hereby

ORDERED that plaintiffs' application for a preliminary injunction be and hereby is *DENIED* without prejudice, and these cases are *DISMISSED* for lack of jurisdiction.