Robert COURTNEY, D.O., Plaintiff,

v.

Ronald CHOPLIN, Empire Medicare, Defendants.

Civil Action No. 01–5478 (JEI).

United States District Court, D. New Jersey.

April 12, 2002.

**650**

Robert Courtney, D.O., Somers Point, NJ, pro se.

Christopher J. Christie, United States Attorney by Paul A. Blaine, Assistant United States Attorney, Camden, NJ, Counsel for Defendant Empire Medicare.

## OPINION

IRENAS, District Judge.

Plaintiff Robert Courtney, a Medicare supplier, brings this action against Empire Medicare Services ("Empire"), a private Medicare insurance carrier under contract with the United States Department of Health and Human Services, to recover the balance of an amount allegedly due for medical services provided to Ronald Choplin, a medicare beneficiary and a co-defendant in this action. This civil action was commenced in the Superior Court of New Jersey and subsequently removed by Defendant Empire to this Court on November 28, 2001, pursuant to 28 U.S.C. 1441(b) and 1442(a)(1). Empire now moves to dismiss Plaintiff's complaint under Fed. R.Civ.P. 12(b)(1). For the reasons set forth below, Defendant's motion to dismiss will be granted.

### I.

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject matter." In evaluating a 12(b)(1) motion, the court first must determine whether the motion attacks the complaint on its face or on its facts. *See Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 69 (3d Cir.2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). As with a 12(b)(6) motion, a court evaluating a facial challenge must accept the allegations in the complaint as true, and disposition of the motion becomes purely a legal question. *Mortensen*, 549 F.2d at 891. On the other hand, if the motion disputes the existence of subject matter jurisdiction in fact, then "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Moreover, in resolving such jurisdictional questions, the court is not confined to the face of the pleadings and may properly consider matters outside the pleadings such as affidavits and other material properly before the court without converting the motion into a Rule 56 summary judgment motion. Fed.R.Civ.P. 12(b); *see also, id.; Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir.1990). In resolving questions concerning the court's authority to adjudicate particular cases or claims, the burden remains on the Plaintiff to establish "that the case is properly before the court at all stages of the litigation." *Tobin v. United States*, 170 F.Supp.2d 472, 476 (D.N.J.2001) (Brotman, J.).

The central issue raised by the instant motion is fact-based. Empire maintains that Plaintiff has failed to timely exhaust all tiers of administrative review available under 42 U.S.C. 1295ff and obtain a "final decision" of the Secretary, and that this underlying procedural default forecloses judicial review of Plaintiff's claim for reimbursement.

### II.

Title XVII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. § 1395 *et.*

*seq.,* commonly known as the Medicare Act, establishes a federally subsidized health insurance program to be administered by the Department of Health and Human Services ("HHS"). Part A of the Act provides insurance for the cost of hospital and related post-hospital services. 42 U.S.C. § 1395c *et. seq.* Part B establishes a voluntary program of supplemental medical insurance covering physicians' charges and other medical services, including ambulance service, for beneficiaries who elect to enroll and pay additional premiums. *See* 42 U.S.C. 1395j, 1395k, and 1395x(s); 42 C.F.R. § 410(40)(a)(2).

Within the HHS, the agency currently known as the Centers for Medicare and Medicaid Services ("CMS") is principally responsible for administering the Medicare Part B program.[1] Pursuant to 42 U.S.C. § 1395u, the Secretary, through CMS, designates certain non-governmental insurance carriers as fiscal intermediaries to whom it delegates primary claims processing responsibility. Medicare beneficiaries are reimbursed for medical procedures, ambulance charges, and other Part B services on the basis of the amounts charged, subject to the carrier's contractual responsibility, as an agent of CMS, to evaluate the reasonableness of the charges. A beneficiary may assign his or her right to receive payment to the physician supplying the service ("supplier"). 42 U.S.C. § 1395u(b)(3)(B); 42 C.F.R. §§ 424.53, 424.55. When a physician accepts a patient beneficiary's assignment of his claim for Medicare benefits, the physician assumes the responsibility for submitting a claim for reimbursement to the carrier for any medical services provided. Moreover, by accepting the assignment, the supplier is generally precluded from seeking recourse against the beneficiary for any out-standing balance of the amount claimed, with certain exceptions for co-insurance and deductibles. 42 U.S.C. 1395u(b)(3)(B)(ii); 42 C.F.R. 424.55(b); *see also, Manakee Professional Medical Transfer Service, Inc.,* 71 F.3d 574, 577 ("If the supplier accepts the assignment, it must accept the carrier's determination as to the amount of reimbursement and ... may not seek the difference from the beneficiary").

The Social Security Act, 42 U.S.C. § 405, which has been incorporated into the Medicare law, *see* 42 U.S.C. § 1395ii, sets forth a comprehensive regulatory scheme through which a beneficiary or supplier can obtain administrative and judicial review of their claims for reimbursement under Part B of the Medicare Act. The relevant administrative regulations establish a multi-tiered review process, consisting of five separate levels of administrative appeal, which culminates with a "final decision" by the HHS Departmental Appeals Board ("Appeals Board") which may then be appealed to the district court. The initial consideration of a beneficiary or assignee's claim for reimbursement is made at the carrier level. The carrier makes an initial determination regarding coverage for specific medical services and the amount of benefits to be paid, and sends written notice of the decision to the beneficiary and the supplier within 60 days after the claim is filed. *See* 42 C.F.R. §§ 405.803, 405.804. A beneficiary or supplier dissatisfied with the carrier's initial reimbursement determination must, within six months of the date of the notice of the carrier's adverse determination is received, make a request that the carrier review its initial decision. *See id.* at § 405.807. If the carrier issues an adverse review determination, the claimant may file a request for

---

1. Prior to July 5, 2001, CMS was previously known as the Health Care Financing Administration. *See* 66 F.R. 35437.

a "fair hearing" before a carrier-appointed hearing officer, but must do so within 6 months of the date of the review determination notice. *See id.* at §§ 405.815, 405.821, 405.823. If denial of the claim is reaffirmed after reconsideration and the claim exceeds $500, the party may seek a fair hearing before an administrative law judge ("ALJ") by filing a request for further administrative review within 60 days of receipt of the carrier hearing officer's decision. Finally, if the ALJ upholds the carrier's decision to deny reimbursement for all or part of the claim and the amount of the remaining Medicare claim exceeds $1000, the supplier may appeal the ALJ's adverse determination to the Appeals Board. A final decision of the Appeals Board either denying the reimbursement claim on its merits or declining to review the ALJ's decision then triggers the 60 day period for seeking judicial review in federal district court, pursuant to 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1395ff(b)(1). *See id.* at § 405.857.

### III.

On July 28, 1998, Plaintiff, Dr. Robert Courtney, performed a bypass graft on Medicare beneficiary, Ronald Choplin, and accepted an assignment of his claim for Medicare benefits. Plaintiff subsequently filed a claim with Defendant Empire Medicare Services, the designated Medicare Part B carrier for New Jersey, seeking reimbursement for his services under two procedure codes, 35571 and 35566, in the amount of $1840.00. On March 19, 1999, Empire notified Plaintiff that while it had accepted his claim for $246.07 for those medical services corresponding to treatment code 35571, his claim under code 35566 would be disallowed. On March 24, 1999, Dr. Courtney sent a letter to Empire's post-payment review department requesting that the carrier review its denial of coverage for those services identified by

treatment code 35566. This letter contained a typed request to "put this matter through whatever appeal mechanism, hearing, committee, fair hearing or any other process that you have available in order to pay this," along with a handwritten notation asking generally that plaintiff's claim be "put ... thru [sic] your full appeal process whatever that might be."

Upon receiving Plaintiff's letter, Empire conducted a review of its initial reimbursement determination and, by letter dated May 14, 1999, advised Plaintiff that it had reaffirmed its decision disallowing reimbursement for the balance of Plaintiff's claim. The notice explained that the basis for Empire's calculation of the amount of payment due was its determination that the types of treatment identified by these two service codes "are considered mutually exclusive" and thus could not reasonably have been "performed at the same session by the same provider on the same beneficiary." The notice further informed Plaintiff, in a Section clearly labeled "APPEAL RIGHTS," of the opportunity to appeal the review determination should he disagree with the conclusions set forth in the letter. The instructions referenced in this section and attached to the letter instructed Plaintiff that he had 6 months within which to request a fair hearing before a carrier-appointed hearing officer and that this could be accomplished by simply signing and dating the bottom of the notice and returning it to Empire at the address provided.

On March 29, 2000, more than 10 months after the date of the notice, Plaintiff sent another letter to Empire's post-payment review department which restated his demand for reimbursement and contained a handwritten notation stating simply: "I asked for a fair hearing but you never scheduled it." On April 12, 2000, in response to Plaintiff's letter, Empire advised Plaintiff that there would be

no further review of his claim because his request for a fair hearing had not been received within 6 months of his receipt of the letter notifying him of the carrier's initial review determination. Notwithstanding Plaintiff's belated request for appeal, Empire informed Plaintiff that it might reconsider this position if Plaintiff provided a satisfactory written explanation for the delay in submitting his request for further administrative review. *See* 42 C.F.R. § 405.821(c) (granting the carrier discretion to extend the period for requesting a carrier hearing).

In response, Plaintiff forwarded a letter to Empire on March 5, 2001, in which he stated, succinctly and without explanation, that he had "filed [his] claim on a timely basis." He further accused Empire of committing Medicare "fraud" by refusing to reimburse him for the balance of his claim and threatened legal action if he were not compensated in full within 10 days. Empire responded to Plaintiff's letter on April 26, 2001, informing Plaintiff that the information in its April 12 letter was correct and that it had determined, based on the information contained in its file, that there was "no reason to reopen the case." On May 9, 2001, Empire received a copy of its April 26, 2001 correspondence containing Plaintiff's handwritten notations maintaining simply that he had "repeatedly" submitted requests for appeals and a fair hearing, but that Empire had failed to consider either request. In two letters dated May 17, 2001, and June 13, 2001, Empire reiterated its refusal to consider Plaintiff's request for a fair hearing before a carrier hearing officer on the grounds that he had failed to file his request within the relevant 6 month time period and had not provided any satisfactory explanation for this delay which would justify extending the filing deadline.

Plaintiff, who is proceeding *pro se*, subsequently filed the instant action in the Superior Court of New Jersey against Empire and Ronald Choplin, the Medicare beneficiary to whom the medical services had been provided, seeking to recover the unpaid balance of his claim for reimbursement under Medicare Part B.[2] On November 28, 2001, the case was removed by Defendant Empire to this Court, pursuant to 28 U.S.C. 1441(b) and 1442(a)(1). Defendant Empire now moves to dismiss Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Fed. R.Evid. 12(b)(1), contending that by not timely filing a request for further administrative review of the carrier's review determination, Plaintiff failed to exhaust all available administrative remedies, and consequently there was no "final decision" by the Secretary reviewable by this Court pursuant to 42 U.S.C. § 405(g). In his terse response to Defendant's motion, Plaintiff insists, without explanation and without contradicting Defendant's well-documented summary of the procedural history of his reimbursement claim at the administrative appeal level, that he "repeatedly submitted the claim, appealed the claim, and requested a Fair Hearing within the deadlines set by Medicare" but that Defendant Empire has improperly failed to act on those requests.

## IV.

Federal courts are courts of limited jurisdiction and possess only that authority to

**2.** Defendant Ronald Choplin, the patient-beneficiary to whom the medical services were rendered, has not joined Defendant Empire in moving to dismiss Plaintiff's complaint; however, the Court observes, without deciding the issue, that, as previously noted, by accepting an assignment of a Medicare beneficiary's right to benefits, a supplier generally agrees to seek reimbursement exclusively from the carrier and is statutorily precluded from looking to the beneficiary to recover any amount claimed for which the carrier denies reimbursement.

adjudicate cases and claims that is both derived from Article III of the Constitution and specifically granted by Congressional legislation enacted pursuant to that Article. *See Bacon v. Sullivan,* 969 F.2d 1517, 1519 (3d Cir.1992) (citing *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)); *see also,* 13 Wright & Miller, Fed. Practice & Procedure Juris.2d § 3522. Thus, Congress "may prescribe the procedures and conditions under which federal courts may review administrative orders." *Bacon,* 969 F.2d at 1519 (citing *Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 336, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958)).

■ In the instant case, the limited authority statutorily granted by Congress to the federal courts to review Medicare reimbursement decisions is prescribed in 42 U.S.C. § 1395ff(b)(1), which states in relevant part:

> Any individual dissatisfied with any determination under subsection (a) [pertaining to the entitlement to and amount of Medicare benefits] of this section as to ... (C) the amount of benefits under part A or part B of this subchapter (including a determination where the amount is determined to be zero) ... shall be entitled to a hearing thereon by the Secretary to the same extent as is

**3.** Congress has further provided that a claimant's statutory entitlement to a hearing is limited to cases involving disputed amounts no less than $500, and that judicial review is unavailable unless the "aggregate amount in controversy is less than $1,000." 42 U.S.C. § 1395ff(b)(2)(B). The balance of Plaintiff's claim for reimbursement exceeds these threshold requirements.

**4.** The Supreme Court has recognized a narrow exception to the rigid jurisdictional bar imposed by Section 405(g) in cases where a plaintiff presents a "colorable constitutional claim" which is collateral to the substantive claim for entitlement to reimbursement. *See*

provided in section 405(b) of [Title 42] and to judicial review of the Secretary's final decision after such hearing as is provided in Section 405(g) of Title 42 ... [3],

As amended, 42 U.S.C. § 405(g) currently states as follows:

> (g) Judicial Review
>
> Any individual, *after any final decision of the Commissioner of Social Security made after a hearing* to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

(emphasis added). As the plain language of the statute dictates, the district court's authority to review administrative determinations under 405(g) is limited to "final decisions of the Secretary made after a hearing." This language is more than simply a codification of the judicial doctrine of exhaustion; rather, it is a statutorily prescribed jurisdictional prerequiste which strictly circumscribes federal court review of administrative decisions with respect to all claims "arising under" the Social Security Act.[4] *See Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *see also, Advanced Medical Tech-*

*Mathews v. Eldridge,* 424 U.S. 319, 330–32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi,* 422 U.S. 749, 764–67, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Penner v. Schweiker,* 701 F.2d 256 (3d Cir.1983) (concluding that district court had jurisdiction to review the Secretary's refusal to grant a hearing where claimant raised a "colorable constitutional claim" that his due process rights had been violated). As the Court observed in *Califano v. Sanders,* "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such claims." 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192. However, Plaintiff has not

*nologies v. Shalala,* 974 F.Supp. 417, 421 (D.N.J.1997) (Simandle, J.).

█ Moreover, pursuant to 42 U.S.C. § 405(h), incorporated into the Medicare Act by 42 U.S.C. § 1395ii, § 405(g) sets forth the exclusive avenue for obtaining judicial review of a Medicare reimbursement decisions, precluding resort to the general jurisdiction of the federal courts. *See Heckler v. Ringer,* 466 U.S. 602, 614–615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Harper by Harper v. Bowen,* 813 F.2d 737, 739 (5th Cir.), cert. denied, 484 U.S. 969, 108 S.Ct. 466, 98 L.Ed.2d 405 (1987); *Sheehan v. Secretary, Health, Education and Welfare,* 593 F.2d 323, 325 (8th Cir. 1979); *see also, Saint Vincent Health Ctr. v. Shalala,* 937 F.Supp. 496, 502 (W.D.Pa. 1995), aff'd, 96 F.3d 1434 (3d Cir.1996) (Table) (holding that plaintiffs may not circumvent 405(g)'s strict jurisdictional prerequisites by invoking the general jurisdiction of the federal courts under 28 U.S.C. §§ 1331 (federal question) and 1361 (mandamus)).[5] The question presented here, then, is whether the carrier's decision, pursuant to the authority delegated by the Secretary, to deny further administrative review on the grounds that Plaintiff failed, without good cause, to file a timely request for a fair hearing before a carrier hearing officer, as required by 42 C.F.R. § 405.821, is a "final decision" subject to federal district court review under § 405(g).

The Social Security Act does not define the term "final decision"; rather "its meaning is left to the Secretary to flesh out by regulation." *Salfi* at 766, 95 S.Ct. 2457; *Bacon,* 969 F.2d at 1520. The statutory scheme devised by Congress is "thus one in which the Secretary may specify such requirements for exhaustion as he deems serve his own interests in effective and efficient administration." *Salfi,* at 766, 95 S.Ct. 2457. Under the regulatory scheme promulgated by the Secretary, while an adverse decision at any stage of the administrative appeals process is "final" in the sense that, unless and until the decision is timely appealed or subsequently revised, the decision represents the binding administrative determination with respect to the claimant's entitlement to reim-

explicitly raised any constitutional claims, nor do the allegations in his complaint suggest any conceivable basis for asserting such a claim.

5. Section 405(h) provides, in relevant part, that "no findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or government agency except as herein provided." The Act further specifically prohibits exercise of jurisdiction over Medicare-related claims pursuant to either 28 U.S.C. § 1331 or § 1346. The Supreme Court has consistently declined to address whether this language similarly forecloses resort to 28 U.S.C. § 1361, which authorizes action in the nature of mandamus. *See Califano v. Yamasaki,* 442 U.S. 682, 698, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *Heckler v. Ringer,* 466 U.S. 602, 616–617, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). At least one court of appeals has held that § 1361, may, in rare circumstances, provide a district court with

jurisdiction to consider otherwise unreviewable procedural decisions which are unrelated to the merits of a claim for benefits and contrary to a clear nondiscretionary duty. *See Dietsch v. Schweiker,* 700 F.2d 865, 868 (2d Cir.1983) (concluding that the district court had mandamus jurisdiction under § 1361 to consider plaintiff's claim that the SSA Appeal Council's determination with respect to the timeliness of plaintiff's request for review was contrary to the plain meaning of its own regulations); *see also, Watters v. Harris,* 656 F.2d 234, 241 n. 12 (7th Cir.1980) ("we reserve for another time a determination whether mandamus jurisdiction exists in federal courts, under 28 U.S.C. § 1361, to review a clearly illegal refusal to reopen or extend filing deadlines."). While the Third Circuit has not directly addressed this issue, this court is persuaded by the district court's reasoning in *St. Vincent* and therefore declines to exercise mandamus jurisdiction over Plaintiff's claims.

bursement, *see* 42 C.F.R. §§ 405.806; 405.812; 405.855(c), a beneficiary or supplier seeking reimbursement is deemed to have secured a "final decision" and is permitted to seek judicial review only after the Appeals Board has either denied the claim for reimbursement on its merits or declined to consider a timely request for review of the ALJ's decision. *See* 42 C.F.R. § 405.857; *see also, Matlock v. Sullivan,* 908 F.2d 492, 494 (9th Cir.1990); *Harper,* 813 F.2d at 739; *Watters v. Harris,* 656 F.2d 234, 236 (7th Cir.1980). The Appeals Board's dismissal of an untimely request for review of an ALJ's adverse determination, on the other hand, is specifically declared to be "binding and not subject to further review." *See* 20 C.F.R. § 404.972 (incorporated by reference pursuant to 42 C.F.R. § 405.856).

With one exception, courts of appeals, including the Third Circuit, have held that the Appeals Council may, within its discretion under the regulations, dismiss untimely requests for review of ALJ decisions and that such decisions are not considered "final decisions" of the Secretary subject to federal court review under 405(g). *See Bacon,* 969 F.2d 1517 (finding that the district court erred *ab initio* in exercising jurisdiction under 405(g) to review the Appeals Council's decision to deny an untimely request for review); *Matlock,* 908 F.2d at 494; *Turner v. Bowen,* 862 F.2d 708, 709–710 (8th Cir.1988); *Harper,* 813 F.2d at 743; *Adams v. Heckler,* 799 F.2d 131, 133 (4th Cir.1986); *Dietsch v. Schweiker,* 700 F.2d 865, 867 (2d Cir.1983); *Watters,*

656 F.2d at 238–239; *but see, Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). District courts similarly lack subject matter jurisdiction under 405(g) to review the Appeal Council's underlying determination with respect to the timeliness of a claimant's request for further administrative review. *See Dietsch v. Schweiker,* 700 F.2d 865, 867 (holding that the district court lacked jurisdiction under 405(g) to review the Secretary's dismissal of Plaintiff's request for review as untimely, despite the existence of a material dispute concerning the timeliness of the request under the applicable Social Security procedures and regulations); *Banks v. Chater,* 949 F.Supp. 264, 266 (D.N.J.1996) (Irenas, J.) (concluding, based on the Third Circuit's holding in *Bacon,* 969 F.2d at 1519, that the court lacked "jurisdiction to review the merits of the claim or even to review the [Social Security Administration]'s determination of the timeliness of the filing"); *see also, O'Connell v. Chater,* 958 F.Supp. 466, 468 (C.D.Cal.1996) (finding that the court lacked jurisdiction under 405(g) to consider "whether the Appeals Council erred in finding plaintiff's request for review to be untimely"). These decisions compel the conclusion that the decision of a Medicare carrier, as an entity with primary responsibility for processing reimbursement claims on behalf of the Secretary, to deny an untimely request for further review at an earlier stage in the administrative appeals process is similarly not a "final decision" subject to judicial review under 405(g).[6] Moreover, because

---

**6.** The Court observes that, even were it to conclude that jurisdiction existed to review the carrier's determination with respect to the timeliness of Plaintiff's request for review, such review would be unlikely to alter the Court's disposition of the instant motion. In his opposition papers, Plaintiff maintains that he submitted several requests for a fair hearing regarding Defendant's decision to refuse reimbursement for the total amount of his

claim; however, in support of this statement, Plaintiff points to three letters attached as exhibits to Defendant's motion papers, each of which preceded the relevant 6-month period following his receipt of the carrier's May 14, 1999 notice informing him that, after reconsidering his claim, Empire had decided to reaffirm its original decision denying reimbursement for the outstanding balance of Plaintiff's claim. Moreover, while Plaintiff's

the Court concludes that it lacks jurisdiction to review the carrier's decision to deny Plaintiff's request for further administrative review and because this procedural default prevents Plaintiff from exhausting all available administrative remedies and obtaining a reviewable "final decision" of the Appeals Board, the Court lacks subject matter jurisdiction to consider the merits of Plaintiff's claim for reimbursement.

## V.

For the reasons stated above, the Court will dismiss Plaintiff's complaint in its entirety for lack of subject matter jurisdiction. The Court will enter an appropriate order.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1)

This matter having appeared before the Court upon Defendant Empire Medicare's Motion to Dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1), and the Court having considered the submissions of the parties, for the reasons set forth in an opinion issued by this Court, which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing,

IT IS on this 12th day of April, 2002,

**ORDERED THAT** Defendant Empire Medicare's motion is **GRANTED** and Plaintiff's complaint is **DISMISSED** in its

earlier letters did contain a request that his claim be processed "through whatever appeal mechanism, hearing, committee, fair hearing or any other process ... available," this Court is unwilling to conclude that this premature demand for full administrative review consti-

entirety for lack of subject matter jurisdiction.

tutes compliance with the administrative review procedures established by the Secretary, which clearly place the burden on the claimant to the file contemporaneous requests for further review at each stage of the administrative appeals process.